# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40232

| | |
|---|---|
| BILLY J. BRINGMAN, | ) |
| | ) Boise, September, 2013 Term |
| Claimant-Appellant, | ) |
| | ) 2014 Opinion No. 76 |
| v. | ) |
| | ) Filed: August 4, 2014 |
| NEW ALBERTSONS, INC., Employer and | ) |
| IDAHO DEPARTMENT OF LABOR, | ) Stephen W. Kenyon, Clerk |
| | ) |
| Respondents. | ) |
| _____ | ) |

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Industrial Commission is <u>affirmed</u>.

Arkoosh Law Offices, Boise, attorneys for appellant. Joshua A. Townsend, Sr. argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for respondent Idaho Department of Labor. Tracey K. Rolfsen argued.

_____

HORTON, Justice.

Appellant Billy J. Bringman (Bringman) appeals the decision of the Idaho Industrial Commission (the Commission) in favor of Respondents New Albertsons, Inc. (Albertsons) and the Idaho Department of Labor (the Department). The Commission determined Bringman willfully made a false statement or failed to report a material fact regarding his separation from Albertsons to obtain unemployment benefits from the Department and ordered Bringman to repay the benefits he received and pay a civil penalty. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 12, 2004, Bringman began his employment with Albertsons. In early October 2010, Bringman was working as an assistant store director. In accordance with Albertsons' policy, he refused to accept a customer's check without proper identification. The customer became irate and subsequently complained to Albertsons about the incident. In response to the

1

complaint, the store director issued Bringman a written warning on October 26, 2010. Bringman refused to sign the warning because he followed company policy by refusing to accept the check without proper identification. As a result of Bringman's refusal to sign the warning, he was immediately placed on leave.

Approximately two to three weeks later, Bringman met with a Vice-President of Human Resources at Albertsons. He was given two options: (1) resign with a severance package;[1] or (2) demotion to a position in a different store with a significant (nearly 50%) reduction in salary. Bringman was told that if he resigned and accepted the severance package, Albertsons would not contest a claim for unemployment benefits. Bringman chose the first option.

On December 8, 2010, Bringman filed a claim for unemployment benefits with the Department. The Department's online claim application form provided Bringman with three options to describe his separation from Albertsons: (1) quit; (2) terminated/discharged; or (3) layoff due to lack of work. Bringman selected the third option, "layoff due to lack of work." The Department then paid unemployment insurance benefits to Bringman. Albertsons did not contest Bringman's claim for the first year.

On December 12, 2011, Bringman filed a second claim for benefits. He again selected "layoff due to lack of work" to describe his separation from Albertsons. Upon notice of this second claim, Albertsons challenged Bringman's eligibility for benefits.[2]

After conducting an investigation, the Department issued an eligibility determination on February 8, 2012, which found that (1) Bringman filed a claim for benefits with the selection "layoff due to lack of work" to describe his separation from Albertsons; (2) Albertsons and Bringman agreed that Bringman had "quit;" and (3) Bringman "failed to provide a reasonable explanation for not providing accurate separation information." Based on these findings, the Department determined Bringman willfully made a false statement or failed to report a material fact to obtain benefits by providing inaccurate information regarding his separation. Because Bringman willfully made a false statement or failed to report a material fact, the Department

---

[1] Justice Schroeder's dissent suggests that the only term of the severance package was Albertsons' broken promise not to challenge Bringman's claim for unemployment benefits. This is conjecture. Both Bringman and the witness from Albertsons spoke of a severance package, however, neither disclosed its terms. This is likely because the nature of the severance package was not at issue in the proceedings below.

[2] We agree with the dissenting justices that the record before this Court shows that Albertsons reneged on a promise it made to induce Bringman's resignation. The focus of this appeal, however, is not on Albertsons' conduct; rather, our focus is on Bringman's conduct in his claim for unemployment insurance benefits. Albertsons' exposure to liability for its change in position is outside the scope of the issues presented by this appeal.

concluded he was not entitled to the benefits that he had received. Bringman requested an appeal of the eligibility determination and, on March 23, 2012, an appeals examiner affirmed the Department's eligibility determination.

On April 5, 2012, Bringman appealed the decision to the Commission. The Commission conducted a de novo review of the record and on July 6, 2012, the Commission affirmed the appeals examiner's decision and ordered Bringman to repay the overpayments plus a civil penalty. The Commission determined that Bringman was ineligible for a waiver of the repayment obligation because the overpayments resulted from a false statement, misrepresentation, or failure to report a material fact. Bringman timely appealed.

## II. STANDARD OF REVIEW

"Whether a claimant voluntarily quit a job for good cause in connection with the employment is a question of fact to be determined by the Industrial Commission." *Ewins v. Allied Sec.*, 138 Idaho 343, 347, 63 P.3d 469, 473 (2003). Although this Court exercises free review over questions of law, factual findings by the Commission will be upheld when they are supported by substantial and competent evidence. *Uhl v. Ballard Med. Prods., Inc.*, 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Id.* "The conclusions reached by the Industrial Commission regarding the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous." *Buckham v. Idaho Elk's Rehab. Hosp.*, 141 Idaho 338, 340, 109 P.3d 726, 728 (2005). "This Court will not consider re-weighing the evidence or whether it would have drawn different conclusions from the evidence presented. All facts and inferences will be viewed by this Court in a light most favorable to the prevailing party before the Commission." *Current v. Haddons Fencing, Inc.*, 152 Idaho 10, 13, 266 P.3d 485, 488 (2011) (citation omitted).

## III. ANALYSIS

In this appeal, we are asked to determine whether substantial and competent evidence supports the Commission's decision that Bringman was not entitled to unemployment benefits because he willfully made a false statement or failed to report a material fact to obtain such benefits. We then consider whether Bringman is eligible for a waiver of the requirement to repay overpayments. Finally, we consider Bringman's request for attorney's fees on appeal.

3

**A.**     **There is substantial competent evidence to support the Commission's decision that Bringman was not entitled to unemployment benefits because he willfully made a false statement or failed to report a material fact to obtain such benefits.**

To obtain unemployment benefits, a claimant must provide "all necessary information pertinent to eligibility," including the cause of his unemployment. I.C. §§ 72-1366(1), (5)–(10). To enforce this requirement, Idaho Code section 72-1366(12) provides: "A claimant shall not be entitled to benefits for a period of fifty-two (52) weeks if it is determined that he has willfully made a false statement or willfully failed to report a material fact in order to obtain benefits." Further, the claimant is obligated to repay any benefits he received as a result of his false statement or failure to report (referred to as overpayments). I.C. §§ 72-1366(12), 72-1369(1). In such cases, the claimant also is subject to a civil penalty. I.C. §§ 72-1366(12), 72-1369(2).

The Commission determined that Bringman was not entitled to benefits because he willfully made a false statement or failed to report a material fact when he selected "layoff due to lack of work" on his claim as his reason for his separation from Albertsons. Instead of "layoff," the Commission determined the appropriate selection for Bringman's separation was "quit" and he should have selected that option.

Bringman appeals the Commission's determination that he was not entitled to benefits under Idaho Code section 72-1366(12). He argues the Commission erred because the elements of materiality, willfulness, and falsity required by Idaho Code section 72-1366(12) were not satisfied by his selection of "layoff due to lack of work" on his claim.

*1.     Bringman's selection of "layoff due to lack of work" on his claim for benefits was material.*

In *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 589 P.2d 89 (1979), this Court defined materiality for purposes of Idaho Code section 72-1366. We explained: "A complete and unqualified disclosure can best be promoted by defining materiality to include *any* information that is relevant to the determination of a claimant's right to benefits." *Meyer*, 99 Idaho at 760, 589 P.2d at 95 (emphasis added). We concluded that "a fact is material if it is relevant to the determination of a claimant's right to benefits; it need not actually affect the outcome of that determination." *Id.* In short, the test for materiality is relevance.

The reason for a claimant's separation from his employment is relevant because separation, in part, determines the claimant's eligibility and thus, his right to benefits. *See* I.C. §§ 72-1366(5)–(6) (eligibility requirements that the claimant's unemployment is not due to

4

voluntary separation without good cause, discharge for misconduct, or failure to accept suitable work without good cause). Because the reason for a claimant's separation is relevant, it is material for purposes of Idaho Code section 72-1366(12). *See Meyer*, 99 Idaho at 760, 589 P.2d at 95.

Our recent decisions have reiterated that the claimant's reason for separation from employment is material. In *Current*, the claimant selected "layoff due to lack of work" on the Department's online application for a claim when the claimant actually had quit his employment due to reduced hours. 152 Idaho at 13, 226 P.3d at 488. Relying upon the *Meyer* definition of materiality, we affirmed the Commission's finding that the claimant made a willful, material, and false statement to obtain benefits. *Id.* Likewise, in *McNulty v. Sinclair Oil Corp.*, 152 Idaho 582, 272 P.3d 554 (2012), we again applied the *Meyer* definition of materiality. In *McNulty*, the claimant failed to report his earnings and part-time employment when he filed a claim for benefits. *Id.* at 583, 272 P.3d at 555. After quoting the definition of materiality from *Meyer*, we stated:

> [t]his Court finds that a claimant's employment status is relevant to the determination of a claimant's right to unemployment benefits. Moreover, the status of employment is material to the Department for several other reasons, including collecting information regarding the availability of jobs and the suitability of work within a particular location.

*Id.* at 586, 272 P.3d at 558. Although *McNulty* applied *Meyer* in the context of a claimant's failure to report new employment, *McNulty* demonstrates our continued application of *Meyer*'s broadly inclusive definition of materiality.

Here, the reason for Bringman's separation was relevant to the determination of his right to benefits because his separation, in part, determined his eligibility for benefits. *See* I.C. §§ 72-1366(5)–(6); *Meyer*, 99 Idaho at 760, 589 P.2d at 95. Thus, there was substantial and competent evidence supporting the Commission's determination that Bringman's selection of "layoff due to lack of work" as the explanation for his separation from Albertsons was material.

2. *Substantial competent evidence supports the Commission's finding that Bringman's selection of "layoff due to lack of work" on his claim for benefits was false.*

The evidence in the record is uncontroverted that Bringman was given the option to remain employed with Albertsons by accepting a demotion or to resign and receive a severance

5

package, coupled with Albertsons' promise not to contest a claim for unemployment benefits. Bringman chose the latter.

Bringman has consistently maintained that he reported that he separated from Albertsons because of a "Layoff due to lack of work" because it was the "best fit" of his three options. The dissenting justices agree with Bringman that none of the three options adequately described the circumstances of his separation from Albertsons. In our view, the inquiry is not as to the sufficiency of the options available to Bringman; it is whether substantial evidence supported the Commission's finding that Bringman's selection was false. The term "layoff" is one of common understanding. It is commonly understood to mean "to put (an employee) out of work, esp. temporarily." Webster's New World Dictionary 800 (2d College ed.1976). The Commission reasonably concluded that Bringman was justified in quitting, rather than accepting a demotion and pay cut. The Commission found that Bringman's election to reject Albertsons' offer of continued employment in favor of resignation and acceptance of a severance package could not fairly be labeled as a "layoff due to lack of work." An employee's decision to resign instead of continuing employment is a "quit," regardless of whether the employee had good cause to do so. We find that substantial and competent evidence supports the Commission's finding that Bringman's selection was false.

> 3. *Substantial competent evidence supports the Commission's finding that Bringman's selection of "layoff due to lack of work" on his claim for benefits was willful.*

This Court has defined willfulness as "imply[ing] simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate the law." *Current*, 152 Idaho at 13, 266 P.3d at 488 (quoting *Meyer*, 99 Idaho at 761, 589 P.2d at 96). "The term 'willfully' refers to those claimants who 'purposely, intentionally, consciously, or knowingly fail to report a material fact [or make a false statement], not those whose omission [or false statement] is accidental because of negligence, misunderstanding or other cause.' " *Cox v. Hollow Leg Pub & Brewery*, 144 Idaho 154, 157, 158 P.3d 930, 933 (2007) (alterations in original) (quoting *Meyer*, 99 Idaho at 761, 589 P.2d at 96). Applying this definition of willfulness, we have stated "a finding that a benefit claimant knew or thought it highly probable that he or she did not know what information a question solicited but nevertheless deliberately chose to respond without pursuing clarification would ordinarily support a conclusion of willful falsehood or concealment." *Meyer*, 99 Idaho at 762, 589 P.2d at 97; *see also McNulty*, 152 Idaho

at 587, 272 P.3d at 559 (claimant's failure to report was willful because he was properly informed of his reporting obligation and his alleged misunderstanding lacked credibility).

In this case, the question of willfulness turns on the Commission's credibility determination, which this Court will not overturn unless clearly erroneous. *Rigoli v. Wal-Mart Assocs., Inc.*, 151 Idaho 707, 712, 263 P.3d 761, 766 (2011). As the factfinder, the Commission "may consider the claimant's explanation unworthy of belief." *Meyer*, 99 Idaho at 762, 589 P.2d at 97.

The Commission identified conflicting and inconsistent testimony by Bringman regarding his separation from Albertsons. Bringman testified that he felt "layoff due to lack of work" was the best option, he did not believe he quit, and he believed "quit" or "discharge" did not apply to his separation. However, Bringman also testified that he agreed that he was presented with the option of either continuing employment or not, he acknowledged that he was not laid off due to lack of work under the Department's definition, and he agreed that continuing work was available. The Commission observed that Bringman did not contact the Department for clarification, even though the Department instructed claimants to report accurately and to contact the Department if they had questions. The Commission further noted the Department's materials "expressly stated fraud included making false statements such as reporting a claimant was laid off when the claimant quit."

After evaluating Bringman's testimony, the Commission determined Bringman selected an option he knew was inaccurate or at least was not completely truthful. Bringman was aware Albertsons would not contest his claim and Bringman had a prior experience with filing a claim for unemployment benefits. *See also McNulty*, 152 Idaho at 587, 272 P.3d at 559 (considering that the claimant previously filed for benefits in discussion of claimant's willfulness).

While we respect the views of our dissenting colleagues, their opinion strays from the standard of review that dictates our decision today. Both of our colleagues have previously authored unanimous opinions recognizing that the Commission, not this Court, is charged with the responsibility of weighing the evidence and evaluating the credibility of witnesses. *See Hopkins v. Pneumotech, Inc.*, 152 Idaho 611, 614, 272 P.3d 1242, 1245 (2012) (J. Jones, J.); *Wulff v. Sun Valley Co.*, 127 Idaho 71, 74, 896 P.2d 979, 982 (1995) (Schroeder, J.). Despite this, Justice Schroeder contends: "Certainly there is an element of confusion in Bringman's testimony, but confusion and misunderstanding are not tantamount to willfully telling

7

falsehoods." In our view, a factfinder may view inconsistencies in a witness' testimony as reflecting a lack of credibility. More importantly, it is not the role of this Court to decide whether a witness' confusion and inconsistency demonstrates innocence or deceit.

Justice Schroeder complains that the Commission "apparently ignored the fact that Albertsons had already conceded the accuracy of [Bringman's] answer a year earlier" and that "[w]eight should have been given to the fact that Albertsons did not contest this explanation for a year." The dissent concludes:

> Bringman is a victim of a corporation that punished him for following its written rules. The same corporation broke its promise not to contest his claim for benefits. He then entered the realm of bureaucratic forms and understandings uncommon to him, notwithstanding the Department's unsupported attribution of expertise in this area to him. The Commission had hearsay information from a corporate representative and a recording, not focused examination of demeanor. It read untruthfulness into answers that appear more likely to be confusion. This is not substantial competent evidence the Court should endorse. Judicial oversight requires more.

It is not this Court's role to determine that the Commission should have afforded weight to the evidence regarding Albertsons' behavior. We hold that that substantial competent evidence supported the Commission's finding that Bringman consciously disregarded his obligation to report accurately and truthfully regarding the circumstances of his separation from employment with Albertsons.

**B.      Bringman is not eligible for a waiver of the requirement to repay overpayments.**

Under Idaho Code section 72-1369, a claimant must repay the benefits he received to which he was not entitled, known as overpayments. I.C. § 72-1369(1). Subsection (5) of Idaho Code section 72-1369 provides a narrow exception to this repayment requirement. In limited circumstances, such as inadvertent error by the Department unknown to the claimant, the claimant may seek a waiver of the repayment. I.C. § 72-1369(5). However, subsection (5) also expressly provides that a waiver will *not* be granted if the overpayment is "one resulting from a false statement, misrepresentation, or failure to report a material fact by the claimant." *Id.* Thus, Idaho law bars application of the waiver when the claimant received overpayments due to a willfully false statement or failure to report a material fact under section 72-1366(12). *McNulty*, 152 Idaho at 588–89, 272 P.3d at 560–61.

Idaho Code section 72-1369 provides for a civil penalty in addition to the repayment obligation. Subsection (2) of Idaho Code section 72-1369 states that a claimant is subject to a

8

civil penalty of twenty-five percent of any resulting overpayment upon a determination that "the claimant is found to have made a false statement, misrepresentation, or failed to report a material fact to the [D]epartment." I.C. § 72-1369(2). The civil penalty percentage increases based on the number of determinations of false statements or failures to report. *Id.* (fifty percent penalty for two determinations, one hundred percent penalty for three or more determinations).

The Commission determined Bringman was not entitled to benefits because he willfully made a false statement or failed to report a material fact to obtain benefits. Therefore, the benefits were overpayments and Bringman was obligated by statute to repay them. I.C. § 72-1369(1). Bringman was ineligible for a waiver of repayment since his overpayments were "resulting from a false statement, misrepresentation, or failure to report a material fact." I.C. § 72-1369(5). Further, Bringman was subject to a civil penalty of twenty-five percent of his resulting overpayment because he was "found to have made a false statement, misrepresentation, or failed to report a material fact to the [D]epartment." *Id.* § 72-1369(2)(a); *see also McNulty*, 152 Idaho at 588–90, 272 P.3d at 560–62 (claimant required to repay overpayments plus penalty because claimant willfully failed to report a  material fact under section 72-1366(12)).

## C.      Bringman is not entitled to attorney's fees.

Idaho Code section 12-117 governs the award of attorney's fees. Under Idaho Code section 12-117(1), a court shall award the prevailing party reasonable attorney's fees "if it finds that the nonprevailing party acted without a reasonable basis in fact or law." I.C. § 12-117(1). Bringman is not entitled to attorney's fees because he is not the prevailing party.

## IV. CONCLUSION

This Court finds that there was substantial and competent evidence to support the Commission's finding that Bringman willfully made a false statement that was material to his application for unemployment insurance benefits. The Commission's decision is affirmed. We award costs on appeal to the Department.

Chief Justice BURDICK and Justice EISMANN **CONCUR**.

SCHROEDER, *Justice Pro tem,* dissenting:

The Court follows straight line analysis which in most instances leads to the proper and just result. However, in this case straight line analysis is akin to a survey using a compass directing to magnetic north! The starting point follows a logical line, but the result is an end

many degrees off true north. A correction was necessary to get to the proper end. That is the situation in this case. The decision of the Commission is based in substantial part on conjecture without underlying facts and disregard for uncontroverted evidence favorable to Bringman. A review of the history and legal authority in this case duplicates much of the Court's opinion, but it is necessary to place the end result in context.

Following three tours of combat duty in leadership, Bringman began his employment with Albertsons on May 12, 2004. In early October 2010, while he was at work as an assistant store director, he refused to accept a customer's check without proper identification. This was consistent with Albertsons' written policy—"Verify ID on all personal check system prompts . . . Associates may not, based upon perceptions of ability to pay or any other reason deviate from the stated company policy." However, the customer got upset, and according to uncontroverted testimony, "dumped her groceries all over the floor in front of the check stand, and stormed out of the store." As related by Bringman, she was "irate." She in turn complained to somebody in Albertsons. Several weeks later after Bringman returned from a vacation, Audrey Wilde, the store manager, told him that he would be written up for the incident, and she issued him a written warning on October 26, 2010. Bringman refused to sign the warning, because he correctly followed company policy by refusing to accept the check without proper identification. As a result of his refusal to sign the warning, Albertsons immediately sent him home from work. Albertsons later told the Department during its investigation that Bringman would not have been sent home if he had signed the warning. The anomaly is that the warning had its origin in Bringman following the company's absolute written policy. That is the starting point leading to the wrong result.

Approximately three weeks after being sent home, Albertsons offered Bringman two options: (1) resign with a severance package and the possibility of rehire after six months or (2) transfer to a subordinate position at about half the pay. Bringman later testified, and the Department does not dispute, that Albertsons told him that they would not contest a future claim by him for unemployment benefits—a promise which they initially honored and then broke. There appears to be no other element of the so-called severance package.[3] Shane Wright, Albertsons' vice president of human resources, testified that Bringman had poor leadership skills and caused problems after the check incident. He had no direct knowledge of this, but relied on a

---

[3] No evidence in the record shows that Bringman received any pay or benefits with the severance package.

phone call for this opinion, hardly the level of reliability most would rely on in making a decision costing a person his livelihood.

On December 4, 2010, Bringman filed a "resignation." On December 8, 2010, he filed a claim for benefits with the Department. On the Department's online application for a claim, he had three options to describe his separation from Albertsons: (1) quit; (2) terminated/discharged; or (3) layoff due to lack of work. None of these boxes fit. He "quit" under the pressure of taking a placement in a job with less status and half the pay. There is testimony that there was a drop down box in which he could give an explanation if the "quit" option was chosen, but the computer program is not in evidence. The opportunity to explain on the computer may or may not have been adequate. Reliance upon an assurance without substantiating evidence for consequences this grave is not warranted. The next box "terminated/discharged" doesn't fit. He wasn't formally fired. He was offered a demotion in status and half the pay. He was, in fact, going to be terminated from his current job. He was going to be fired if he didn't leave or accept a demotion to unsuitable employment. The final box—"lack of work"—doesn't fit perfectly either. Certainly there was a lack of work for him at the pay and responsibility level from which he was being pushed with the so-called severance package which really promised no more than a willingness by Albertsons to not object to his claim for unemployment compensation. So the bureaucratic process provided him with three options, none of which really fit. And apparently only one provided a drop down box for an explanation.

Bringman selected the third option "layoff due to lack of work." Albertsons did not contest Bringman's claim for benefits during that benefit year. Following his claim, the Department provided Bringman with benefits.

On December 12, 2011, Bringman filed a second claim for benefits. He again selected "layoff due to lack of work" to describe his separation from Albertsons. Upon notice of this second claim, however, Albertsons requested a determination of Bringman's eligibility for benefits. What Albertsons promised a year earlier to secure his departure was now contested. Apparently in their eyes he left for lack of work initially but did not leave for lack of work later, though the facts of his departure remained the same. They got rid of him with a promise that was ultimately not kept.

After conducting an investigation, the Department issued two eligibility determinations, only the second of which is relevant to the case at hand. The second eligibility determination

provided the following summary of facts: (1) Bringman filed a claim for benefits with the selection "layoff due to lack of work" to describe his separation from Albertsons; (2) Albertsons and Bringman agreed that Bringman had "quit;" and (3) Bringman "failed to provide a reasonable explanation for not providing accurate separation information." Based on this supposed state of facts which has erroneous underpinnings, the Department determined Bringman willfully made a false statement or failed to report a material fact to obtain benefits by providing inaccurate information regarding his separation. Consequently, he was not entitled to the benefits that he had received.

On February 22, 2012, Bringman requested an appeal of the eligibility determination. On March 12, 2012, Appeals Examiner Thomas Holden conducted a telephone hearing and subsequently issued a decision affirming the Department's eligibility determination. The appeals examiner determined "no facts" supported Bringman's selection of "layoff due to lack of work" on his claim for benefits and Bringman provided no "reasonable explanation" for this selection. That statement is simply wrong. Bringman did state facts supporting his selection. But the appeals examiner concluded Bringman was not entitled to benefits because he willfully made a false statement or failed to report a material fact to obtain benefits. The appeals examiner also concluded Bringman was obligated to repay the benefits he received to which he was not entitled, referred to as overpayments.

On April 5, 2012, Bringman appealed the decision to the Commission. The Commission conducted a de novo review of the record. On July 6, 2012, the Commission affirmed the appeals examiner's decision that Bringman was not entitled to benefits for willfully making a false statement or failing to report a material fact. Therefore, the Commission ordered Bringman to repay the overpayments. The Commission further ordered that Bringman was ineligible for a waiver of the repayment obligation because the waiver did not apply when the overpayments resulted from a false statement, misrepresentation, or failure to report a material fact. The Commission also imposed a civil penalty.

Bringman appealed to this Court hoping to escape the unfairness of the result in this case which compounded with each step in the process.

There is no dispute as to the standard of review. "Whether a claimant voluntarily quit a job for good cause in connection with the employment is a question of fact to be determined by the Industrial Commission." *Erwins v. Allied Sec.*, 138 Idaho 343, 347, 63 P.3d 469, 473 (2003).

This Court exercises free review over questions of law, factual findings by the Commission will be upheld when they are supported by substantial and competent evidence. *Uhl v. Ballard Med. Prods., Inc.*, 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Id.* "The conclusions reached by the Industrial Commission regarding the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous." *Buckham v. Idaho Elk's Rehab. Hosp.*, 141 Idaho 338, 340, 109 P.3d 726, 728 (2005). "This Court will not consider re-weighing the evidence or whether it would have drawn different conclusions from the evidence presented. All facts and inferences will be viewed by this Court in a light most favorable to the prevailing party before the Commission." *Current v. Haddons Fencing, Inc.*, 152 Idaho 10, 13, 266 P.3d 485, 488 (2011) (citation omitted). Giving honor to these words leads to the conclusion of the Court, but the line leading to the conclusion of the Commission has too many flaws. Substantial and competent evidence does not support the Commission's decision that Bringman willfully made a false statement or failed to report a material fact to obtain benefits.

To obtain unemployment benefits, a claimant must provide "all necessary information pertinent to eligibility," including the cause of his unemployment. I.C. § 72-1366(1), (5)–(10). To enforce this requirement, I.C. § 72-1366(12) states: "A claimant shall not be entitled to benefits for a period of fifty-two (52) weeks if it is determined that he has willfully made a false statement or willfully failed to report a material fact in order to obtain benefits." I.C. § 72-1366(12). Further, the claimant is obligated to repay any benefits he received as a result of his false statement or failure to report (referred to as overpayments). I.C. §§ 72-1366(12), -1369(1). The claimant also is subject to a civil penalty. I.C. §§ 72-1366(12), -1369(2).

Pursuant to I.C. § 72-1366(12), the Commission determined Bringman was not entitled to benefits because he willfully made a false statement or failed to report a material fact when he selected "layoff due to lack of work" on his claim as his reason for his separation from Albertsons. Instead of "layoff," the Commission determined the appropriate selection for Bringman's separation was "quit," and he should have selected that option on his claim to provide truthful and accurate information. There is no dispute that Bringman's selection of "layoff due to lack of work" on his claim for benefits was material.

13

In *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 760, 589 P.2d 89, 95 (1979), the Court defined materiality in the context of I.C. § 72-1366(12): "A complete and unqualified disclosure can best be promoted by defining materiality to include any information that is relevant to the determination of a claimant's right to benefits." Further, "a fact is material if it is relevant to the determination of a claimant's right to benefits; it need not actually affect the outcome of that determination." *Id.* Consequently, the fact that the record establishes that Bringman was entitled to benefits is not conclusive in his favor. Nonetheless, it is a consideration when the draconian consequences in play in this case are resolved.

In *Current v. Haddons Fencing, Inc.*, 152 Idaho 10, 13, 266 P.3d 485, 488 (2011), the claimant selected "layoff due to lack of work" on the Department's online application for a claim when the claimant actually had quit his employment due to reduced hours. Referencing the *Meyer* definition of materiality, the Court affirmed the Commission's decision that the claimant made a willful, material, and false statement to obtain benefits. *Id.* The facts of *Current* bear a relationship to this case but are not the same. Albertson's proposed more than a reduction in hours. The job proposed was a totally different position at half the pay—unsuitable employment. In a layman's mind that may sound a lot like a lack of work.

Clearly the information Bringman supplied to the Department regarding his separation from Albertson's was relevant to the determination of his right to benefits. That tells nothing about whether he made a false statement.

Bringman contends his selection on the Department's online application for a claim was not false. He argues "layoff due to lack of work" was the most accurate selection, because a reasonable individual in his situation would have understood his separation as a layoff rather than a quit. He relies on a separate part of the Commission's decision in which the Commission determined he had good cause for his "voluntary separation" from Albertsons. The Commission's decision determined Bringman acted with good cause in his choice to resign rather than accept the subordinate position, because the subordinate position was "not suitable."[4] *See also* I.C. § 72-1366(6) (claimant remains eligible for benefits if his unemployment is due to good cause rejection of unsuitable work). Because Bringman had good cause for his voluntarily separation, the Commission determined Bringman initially was eligible for benefits. Despite the

---

[4] The subordinate position offered "a substantially lower wage." Further, the Commission determined the "demotion" was not based on Bringman's conduct, "thereby making the demotion more akin to a unilateral change in the terms of the employment agreement."

fact that Bringman was eligible for benefits, the Commission concluded "quit," not "layoff due to lack of work," was the proper selection for Bringman's reason for separation on his claim. Thus, according to the Commission, Bringman made a false statement or failed to report a material fact to obtain benefits by providing a false reason for his separation which required Bringman to repay the benefits to which he would have been entitled had he filled out his claim as the Commission thought he should. However, had he checked "quit" he would also have given an arguably equally false statement. He did not "quit" in either a legal sense or common sense. The word "quit" implies voluntary action. He was forced out. The position that there was a drop down box that would have allowed him to explain "quit" is not conclusive. There are two problems with holding this against Bringman. First, this record does not include the computer screen to allow the Court to make a determination of the clarity of information that might be required. Second, there apparently was no drop down box for the selection Bringman made. Had there been, it may be that fully accurate information would have been provided. Perhaps a simple question on the form might suffice—why did you leave employment?

Bringman contends his statement or failure to report was not false because a reasonable individual would have understood a "forced" resignation as a layoff, not a quit. He further argues the layoff was in fact due to a "lack of work" because the Commission determined Albertsons offered no suitable alternative position. There is more logic to this position than saying a person "quit" when in fact the person was driven out.

The Department asserts Bringman's selection was false in three related arguments. First, the Department contends Bringman was not "laid off" because Bringman, an assistant store manager, was not a "lay person" unfamiliar with plain meaning of the term. The extent of Bringman's knowledge and training is supposition. Supposition is not a proof of a fact. Respect for determinations should not extend to facts made up in the head rather than shown by the record. Supposition is not substantial, competent evidence. It should not play a part in a decision.

The Department also notes that the Commission categorized Bringman's separation as a quit, even though the Commission determined he had good cause to do so. It's a quit because we say it's a quit—even if the facts don't show that.

The Department asserts that no evidence in the record supported Bringman's claim of "lack of work" because Bringman was offered alternative, albeit unsuitable work with

Albertsons. To lay people that may well sound like "lack of work." There is no information the position he was forced from remained open. It may no longer have been available so far as the record is concerned. But the record is barren on that point. The Department and the Commission apparently assume that to be the case despite a lack of evidence. Is it possible the position no longer existed after pushing Bringman out the door? It is a supposition to assume the position continued to exist.

The Department argues the Court should give deference to the Commission's factual findings on Bringman's credibility. That is true, but not rubber stamp true. Otherwise, eliminate judicial oversight.

The Court will not overturn the Commission's credibility determinations unless clearly erroneous. *Rigoli v. Wal-Mart Assocs., Inc.*, 151 Idaho 707, 712, 263 P.3d 761, 766 (2011). As the fact-finder, the Commission "may consider the claimant's explanation unworthy of belief." *Meyer*, 99 Idaho at 762, 589 P.2d at 97. This is all good black letter law, but it does not extend to sanctifying unsupported or speculative findings.

The Commission listened to an audio recording of the testimony to conclude that Bringman's explanation regarding the accuracy of his selection was "unworthy of belief." The Commission did not have the benefit of observing his demeanor. Anybody who has tried cases knows there is a broad gap between the validity of decisions made on personal observations and sound only.

Bringman testified that he felt "layoff due to lack of work" was the best option. He did not believe he quit, and he believed "quit" or "discharge" did not apply to his separation. Conversely, Bringman also testified that he agreed that he was presented with the option of either continuing employment or not and acknowledged that he was not laid off due to lack of work under the Department's definition. The conclusion of the Commission that he was offered unsuitable employment makes the Department's definition inapplicable. Certainly there is an element of confusion in Bringman's testimony, but confusion and misunderstanding are not tantamount to willfully telling falsehoods. The Commission apparently was persuaded by the fact that Bringman did not contact the Department for clarification. One must wonder why a computer form would lack clarity on a common situation easily described. A consequence of the Commission's approach is that a person who was entitled to unemployment benefits is no longer entitled to them because, according to the Commission, he checked the wrong computer box,

16

though there was no clearly accurate box to check. Bringman is paying dearly for a bureaucratic lack of precision. Additionally, it apparently ignored the fact that Albertsons had already conceded the accuracy of his answer a year earlier.

The problem with ruling against Bringman on credibility is that there are virtually no disputes on the facts. Bringman was going to be fired unless he took unsuitable employment. The category fired didn't fit. He didn't quit in the sense of making a voluntary decision to leave. He had a hammer to his head ready to be dropped if he didn't accept the so-called "severance package." It must be remembered that he was in trouble at Albertsons for following an absolute policy laid down by Albertsons and refusing to sign off on the written warning for following the rule written in absolute terms. Quit or be demoted to unsuitable work hardly means "quit" in any legal or traditional sense. The Court is told there is a drop-down box for explanations. That is not in the record, and one can only speculate as to its clarity. Finally, "laid off for lack of work" is as close as "quit." But apparently there is no drop-down box to give an explanation which might clarify what was actually happening. Weight should have been given to the fact that Albertsons did not contest this explanation for a year. Had Albertsons said they didn't agree when the first application was made, Bringman could have explained his choice and outlined the facts which would have justified his claim of unemployment, avoiding the obligation of repayment and penalties. In sum, apparently Albertsons agreed to Bringman's choice of the reason of he left employment but then elected to back out of that position, exposing him to the avoidable hardships he now faces. Odd how there is an unspoken timeline on a promise made.

The Court has defined willfulness as "imply[ing] simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate the law." *Current*, 152 Idaho at 13, 266 P.3d at 488 (quoting *Meyer*, 99 Idaho at 761, 589 P.2d at 96). "The term 'willfully' refers to those claimants who 'purposely, intentionally, consciously, or knowingly fail to report a material fact [or make a false statement], *not those whose omission [or false statement] is accidental because of negligence, misunderstanding or other cause*.'" *Cox v. Hollow Leg Pub & Brewery*, 144 Idaho 154, 157, 158 P.3d 930, 933 (2007) (alterations in original) (emphasis added) (quoting *Meyer*, 99 Idaho at 761, 589 P.2d at 96). Applying this definition of willfulness, the Court stated "a finding that a benefit claimant knew or thought it highly probable that he or she did not know what information a question solicited but nevertheless deliberately chose to respond without pursuing clarification would ordinarily

17

support a conclusion of willful falsehood or concealment." *Meyer*, 99 Idaho at 762, 589 P.2d at 97; *see also McNulty*, 152 Idaho at 587, 272 P.3d at 559 (claimant's failure to report was willful because he was properly informed of his reporting obligation and his alleged misunderstanding lacked credibility).

Bringman argues his selection was not willful but accidental. According to Bringman, he did not have the requisite level of knowledge for willfulness because (1) at the time of his selection he "felt confident in his understanding of the form and the information it sought" and (2) the Department's online application was so unclear that it negated his ability to form the intent to make a false statement.

Bringman may have been negligent or misunderstood the form, but that does not rise to the level of a willful falsehood. In common parlance, he did not quit—he was forced out. He was not fired—but would have been. The box "laid off/lack of suitable work" is perhaps not fully accurate, but as close or closer than the other choices. His job was no longer available, and there was no suitable alternative. Classifying this as willful misrepresentation is error. Bringman is a victim of a corporation that punished him for following its written rules. The same corporation broke its promise not to contest his claim for benefits. He then entered the realm of bureaucratic forms and understandings uncommon to him, notwithstanding the Department's unsupported attribution of expertise in this area to him. The Commission had hearsay information from a corporate representative and a recording, not focused examination of demeanor. It read untruthfulness into answers that appear more likely to be confusion. This is not substantial competent evidence the Court should endorse. Judicial oversight requires more.

The decision of the Commission denying benefits, ordering the repayment of benefits, and imposing a penalty should be reversed.

J. JONES, Justice, dissenting.

I am unable to join in the Court's opinion. While I agree with Justice Schroeder's characterization of Albertson's[5] rather egregious conduct, my dissent is more narrowly focused to the issue of whether Bringman sought to obtain unemployment benefits by willfully making a false statement or willfully failing to report a material fact. Bringman had three alternatives to select on the Department of Labor's (DOL) on-line claim form: (1) quit; (2)

---

[5] It should be noted that when Bringman's employment relationship with Albertsons was severed, that company was under the ownership of SuperValu rather than the current owner. While this fact has no bearing on the outcome, it does correctly identify the entity responsible for the wrongful conduct.

terminated/discharged; or (3) lay off due to lack of work. Under the particular facts of this case, his selection of any of the three would have been justified and, importantly, Bringman was clearly eligible for unemployment benefits. Therefore, I would hold as a matter of law that Bringman did not willfully make a false statement or willfully fail to report a material fact in order to obtain benefits.

The Commission based its decision that Bringman was "eligible for benefits" on the finding that he "voluntarily quit" his job with good cause connected to the employment. A superficial reading of the record might support the conclusion that Bringman "quit" his job, since he did submit a resignation, but the finding that he quit "voluntarily" is unsupported by the record and in conflict with the Commission's finding that Bringman quit for good cause. Indeed, the Commission itself noted that "IDAPA 09.01.30.450.03 provides that 'good cause' is established when the claimant demonstrates that his or her real, substantial, and compelling circumstances would have forced a 'reasonable person' to quit." When a person is "forced" to quit, it can hardly be said that he quit voluntarily.[6] Nevertheless, since Bringman submitted a forced resignation, he could have justifiably selected the "quit" alternative.

However, as the Commission observed in its decision, Bringman contended "that he was constructively discharged because Employer forced him to quit." The Commission failed to address this contention or to cite any authority on the issue of constructive discharge. The closest the Commission came to acknowledging the contention is observing that "Claimant failed to sufficiently show words or actions by Employer that would logically lead a prudent employee to believe that his or her employment was terminated." If this is intended as a formulation of the constructive discharge theory, it is incorrect. It appears to assume that an employee is constructively discharged when he believes that the employer intends to fire him. The correct theory of constructive discharge is that the employee quits because the employer has imposed unendurable working conditions. *Waterman v. Nationwide Mut. Ins. Co.*, 146 Idaho 667, 672,

---

[6] Although the Commission did not specify which type of willful act it found Bringman to have committed, it discounted his testimony that he did not believe he quit his employment because he admitted he was presented with the option of continuing with a demotion. The Commission then finds that "[t]he decision to separate his employment relationship was solely Claimant's. Claimant chose to leave his employment even though additional work was available." Again, this is directly contrary to the Commission's finding that Bringman established "good cause" demonstrating that his "real, substantial, and compelling circumstances would have forced a 'reasonable person' to quit." Bringman's decision to separate from Albertson's could not have been "solely" his, if he was forced to quit.

19

201 P.3d 640, 645 (2009). This Court has stated the theory in two fairly similar fashions. In *Waterman*, we said:

> Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?

*Id.* In *O'Dell v. Basabe*, we stated that constructive discharge is "defined as 'harassment, intimidation, coercion, or other aggravating conduct that renders working conditions intolerable' and that 'a reasonable person would terminate the relationship under similar circumstances.'" 119 Idaho 796, 817, 810 P.2d 1082, 1103 (1991).

There is obviously a good deal of overlap between quitting for good cause and being constructively discharged. With regard to the former, this Court has stated:

> Whether "good cause" is present depends upon whether a reasonable person would consider the circumstances resulting in the claimant's unemployment to be real, substantial, and compelling. . . . [T]he circumstances which compel the decision to leave employment must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical; *there must be some compulsion produced by extraneous and necessitous circumstances.* The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman.

*Schafer v. Ada County Assessor*, 111 Idaho 870, 871, 728 P.2d 394, 395 (1986) (emphasis in original). Presumably, a person who is constructively discharged also quits with good cause but the reverse is likely not true. Not all quits for good cause amount to constructive discharges. For a constructively discharged person to determine whether to report "quit" or "discharged" is not an easy task.

The Commission's decision looked only at the issue of whether Bringman quit for good cause and did not consider whether the good cause might have amounted to a constructive discharge. The Commission based its determination of good cause on the following findings:

(1) Bringman declined to accept a check from a customer who "did not have proper identification." In doing so, Bringman was strictly following company policy which stated that compliance "is imperative. Associates may not, based upon perceptions of ability to pay or any other reason deviate from the stated company policy."

(2) The customer complained and Bringman received a write-up that "instructed Claimant to follow Employer's policy and procedure and noted Claimant displayed poor leadership skills during the incident."

20

(3)     "The record lacks any evidence of Claimant's 'poor leadership skills' . . . and "there is no evidence that he exhibited 'poor leadership skills.'"

(4)     After receiving the write-up, Bringman "was suspended for three weeks and did not work." Thereafter he met with an Albertson's representative, who presented him with "only two options: either resign or be demoted." The demotion would reduce "his yearly wages by at least $20,000" and he would become an hourly, rather than a salaried, employee.

(5)     "Claimant testified that he may not receive many hours with the demotion." The Employer "did not contest the significant wage reduction or Claimant's concerns about the number of hours available."

(6)     "[T]he record lacks competent evidence that Employer's offer of the demotion was due to Claimant's conduct. Therefore, Employer's offer of a demotion is more akin to a unilateral change in employment and the offer of continued employment . . . was not suitable."

(7)     Bringman chose the resignation option, which included Albertson's agreement that it would not contest his claim for unemployment benefits.

The foregoing conduct on the part of Albertson's certainly presents a colorable claim for constructive discharge. Bringman was given the choice of resigning or taking "unsuitable work." In reality, Bringman was given three choices—take the demotion with its nearly 50% reduction in pay, submit a forced resignation, or be terminated—because implicit in Albertson's offer was that if Bringman chose neither resignation nor demotion, he would be outright fired. This came about because he strictly followed the company's check cashing policy. For doing so, Bringman was rewarded with a phony write-up claiming he displayed poor leadership skills and suspended for three weeks without work. This claimant, who had served his country for two tours in Iraq, certainly had the right to expect that his organization would back him up for following its checking cashing orders. Instead, Albertson's subjected him to unwarranted discipline and unsupported criticism of his leadership skills for doing what he was supposed to do. In essence, Bringman was betrayed by his employer—essentially shot in the back for observing company policy—and then insulted and essentially forced to quit. Welcome home, soldier.

It is difficult to see how a reasonable and self-respecting person in Bringman's position would not have felt compelled to resign because of Albertson's misconduct. As noted above, constructive discharge is "assimilated to a formal discharge for remedial purposes." *Waterman*, 146 Idaho at 672, 201 P.3d at 645. Had Bringman chosen the terminated/discharged alternative on the on-line application form, he would have been justified under these facts. The Commission erred in failing to consider his contention that he was constructively discharged.

The option Bringman did select—layoff due to lack of work—is equally supported by the record. In its decision, the Commission acknowledged that "Claimant asserts that he was laid off due to a lack of suitable employment." In this regard, the Commission found:

(1)     Albertson's "offer of continued employment . . . was not suitable."

(2)     "Employer's offer of continued employment at a substantially lower wage was not suitable work for Claimant under the facts contained in this record."

(3)     "[T]he job [offered by Albertson's] was not suitable for Claimant."

(4)     "Claimant is eligible for [unemployment] benefits."[7]

The Court cites *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 789 P.2d 89 (1979) in upholding the Commission's decision that Bringman acted improperly in choosing the lack of work alternative. However, examination of what the Court did in *Meyer* casts a somewhat different light on the matter. In *Meyer*, the Court reversed a determination by the Commission that the claimant willfully withheld a material fact in order to obtain unemployment benefits. *Id.* at 759−60, 589 P.2d at 94−95. After having been laid off by Skyline and receiving unemployment benefits for four or five months, Meyer was offered a new position by Skyline. However, in his weekly certification form for receiving continuing benefits he "answered 'no' to the question, 'Were you offered any work during the week . . . which you refused?'" *Id.* at 756, 589 P.2d at 91. Despite Meyer's contention that he had given the "no" response to the question on the weekly certification form "because he understood the question to ask only whether he had refused an offer of suitable work," he was denied unemployment benefits for willfully withholding a material fact to obtain the benefits. *Id.* This Court upheld the Commission's determination that Meyer failed to report a material fact (*Id.* at 760, 589 P.2d at 95), but reversed the Commission's determination that he had "willfully failed to report" his refusal of the job offer, remanding the case for reconsideration. *Id.* at 762, 589 P.2d at 87. In doing so the Court observed: "Meyer maintained throughout his testimony that he understood the question on the weekly certification form to ask whether he had refused an offer of *suitable* work." *Id.* at 760, 589 P.2d at 95 (emphasis in original). Similarly, in this case, Bringman asserted that he had chosen the "lack of work" alternative because it was not suitable work. Indeed, the Commission

---

[7] Not only did the Commission determine that Bringman was eligible for unemployment benefits, it determined that "[s]ince Claimant voluntarily left his employment for good cause connected with the employment, Employer's account is chargeable for experience rating purposes." In other words, his termination counted against Albertson's unemployment insurance rating as if Bringman was entitled to retain the benefits paid to him.

specifically found that the demotion offered by Albertson's was not "suitable" work. Thus, he had reasonable grounds for selecting the lack of work alternative.

I would hold, under the particular facts of this case, that Bringman would have been justified in choosing any of the three alternatives on the on-line claim form. But, assuming that Bringman inappropriately chose the lack of work alternative, I would hold that he did not act willfully in doing so. Idaho Code § 72-1366(12) provides that a claimant shall not be entitled to benefits "if it is determined that he has willfully made a false statement or willfully failed to report a material fact in order to obtain benefits." It should first be noted that the Commission's decision essentially overlooks the "or" in this language. The Commission begins its consideration of the issue under the heading "**Willful Failure to Report Material Facts**." It then notes, DOL "determined . . . that Claimant willfully made a false statement in order to obtain unemployment insurance benefits." The Commission goes on to state that "the crux of this matter is determining whether Claimant's false statement was willful." The Commission also says, "Claimant received benefits for the weeks at issue because he did not disclose all of the material information relevant to determining his eligibility. . . . As concluded above, Claimant's false statement was willful." The Commission states in its legal conclusions that "Claimant willfully made a false statement or willfully failed to report a material fact for the purpose of obtaining unemployment benefits." The statute provides two separate grounds for denying a claimant unemployment benefits―willfully making a false statement or willfully failing to report a material fact. I.C. § 72-1366(12) These two grounds are separated by an "or." It isn't clear in this case whether the Commission understood the distinction, nor is it clear as to the particular ground upon which the Commission ultimately based its decision.

When he filled out his application form, Bringman was well aware that Albertson's would not contest his application and that he would likely receive unemployment benefits. And, indeed, the Commission determined that he was eligible for benefits. Given the facts that he had justification for selecting any of the three available alternatives, that he knew he was likely to get them, and that he was being forced out on specious grounds, it is certainly understandable that Bringman would select the alternative that would do the least harm on his work record.[8] He was

---

[8] While both federal and state law prohibit the disclosure of DOL records themselves, a person applying for employment is routinely required to honestly disclose the circumstances of his or her separation from prior employment positions. Indeed, Bringman testified that this was of concern to him. And, having handled quite a number of employment cases for both sides while I was in private practice, it became clear that the confidentiality

23

given the unappetizing choice of being demoted with a 50% reduction in pay, being forced to resign, or, failing either of those, being fired. It would be hard to explain to a prospective employer that you were demoted or fired for following your former employer's explicit policy regarding acceptance of checks.

The dilemma intensifies for a person with Bringman's background—two tours of duty with the U.S. armed forces in Iraq. If such a person selects the firing option on the application, it brings up the unfounded stigma of dereliction of duty, conduct unbecoming, and the like. If one selects the quit option it is counter to the entire philosophy of the armed services. American military personnel are not quitters. Bringman was essentially forced to quit for doing what his orders at Albertsons required him to do—not the best way to thank one who has served his country and to introduce him to the civilian workforce.

The bottom line is that Bringman was placed in a multi-faceted dilemma in a situation where whatever he chose would still result in him receiving unemployment compensation benefits. There was no willful design on his part to misrepresent his status in order to obtain benefits to which he was not entitled. He was going to get benefits in any event. He was not the one who placed himself in that unfortunate situation. He may have wanted to get benefits through the choice that did the least damage to his reputation—having no suitable work available, rather than being known as a quitter or person who was demoted or fired.

*Smith v. State*, *Dept. of Employment*, 107 Idaho 625, 627, 691 P.2d 1240, 1242 (1984) presented a somewhat analogous situation. The employee, Smith, failed to report hours that he had worked but for which he did not expect to be paid. *Id.* This Court agreed with the Industrial Commission's determination that Smith failed to report a material fact but then said:

> The next question is whether such failure was willful. There is no question but that the claimant's action was knowingly done; that is, his omission of the extra hours worked was not inadvertent, but it was not "knowing" in the sense that he understood the necessity for reporting that particular fact.

*Id.* The Court noted that Smith felt he need not report the extra hours since he was receiving no compensation for them. *Id.* Citing *Meyer* (99 Idaho at 761, 589 P.2d at 96), the Court stated that "Idaho case law indicate[s] that 'willful' implies a *conscious wrong*. . . . To interpret the willful requirement in I.C. § 72-1366[12] otherwise, would create a type of constructive knowledge." *Id.*

---

requirements were loosely observed by combatants on both sides. What one places on his or her work record or resume must therefore be accurate or consequences may ensue.

at 628, 691 P.2d at 1243 (emphasis added). The Court then reversed the Industrial Commission's holding "that claimant willfully failed to report a material fact in order to obtain unemployment insurance benefits, as being based upon the [Commission's] erroneous interpretation of 'willful.'" *Id.* Here, even if Bringman chose the incorrect reason for his employment termination, it was not willfully done to obtain benefits to which he was not entitled.

I would hold that the Commission erred in failing to consider whether Bringman was constructively discharged, in finding that he voluntarily quit, in failing to specify how he violated the provisions of I.C. § 72-1366(12), and in determining that he was precluded from receiving unemployment benefits under the provisions of that statute. I would hold, as a matter of law, that Bringman did not commit a "conscious wrong" in order to obtain unemployment insurance benefits. Each of the available three alternatives on the claim form were reasonable choices for Bringman under the facts of this case and he was unquestionably eligible for receipt of unemployment benefits. Therefore, I would reverse the Commission's decision.