691 P.2d 1240

**Larry L. SMITH, Claimant-Appellant,**

v.

**STATE of Idaho, DEPARTMENT OF EMPLOYMENT, Respondent.**

No. 14773.

Supreme Court of Idaho.

April 25, 1984.

On Rehearing Dec. 4, 1984.

Larry L. Smith, pro se.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Evelyn Thomas and Steven M. Stoddard, Deputy Attys. Gen., Boise, Roger B. Madsen, Amicus Curiae, on behalf of the Idaho Association of Commerce & Industry, for respondent.

HUNTLEY, Justice.

We are asked to decide whether the State Industrial Commission erred in holding that Larry L. Smith willfully failed to report a

material fact in order to obtain unemployment compensation benefits as provided for by I.C. § 72–1366(*l*), and holding that, for the purposes of Mr. Smith's eligibility for benefits, the week of January 16, 1982, was not a "compensable week" within the meaning of I.C. § 72–1312.

During the time Mr. Smith was receiving unemployment compensation benefits he was employed part-time as an electronics technician at a radio station. When hired, he was paid $350.00 per month, with the understanding that he work as repair services were needed, for a total of approximately 30 hours a month. Since his work was only part-time, he was eligible for unemployment insurance benefits. Based on his monthly earnings he reported wages from this job as $81.62 per week.

After several months a new radio station manager replaced the person who had hired Mr. Smith. The new manager required that he work more than 30 hours a month, but his pay did not increase. Mr. Smith did not protest for fear of losing his job. During some weeks he worked substantially more than his prior average of seven hours, but he continued to report earnings of $81.62 each week because that was all he was being paid. He did not report the uncompensated extra hours worked.

Also, during the time he was receiving unemployment compensation claimant went with a friend to the Duck Valley Indian Reservation to complete a project, which he did not report.

█ I.C. § 72–1366(*l*) provides that if a claimant for unemployment insurance benefits has willfully made a false statement or representation, or willfully failed to report a material fact in order to obtain benefits, he is not entitled to benefits for a period of 52 weeks from the date of such determination. Since Mr. Smith regularly reported all of his earnings on his weekly certification form, the question is whether the number of hours worked—independent of any compensation received—constitutes a "material fact" within the meaning of I.C. § 72–1366(*l*). We hold that it does. In

*Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 760, 589 P.2d 89, 95 (1979), we stated that "a fact is material if it is relevant to the determination of a claimant's right to benefits; it need not actually affect the outcome of that determination." Benefits are payable only as to a "compensable week," defined in I.C. § 72–1312; the definition provides for both amount of earnings and amount of time to be considered. The latter is important in determining whether the week for which benefits are sought was "a week of either no work or less than full-time work." The number of hours during the week which a claimant is working, even though the work may be voluntary and no compensation received, may nevertheless be material to the question of whether he is "available for suitable work, and seeking work" as required for eligibility under I.C. § 72–1366(d). Hence, the number of hours worked during the week for his employer, whether they be gratuitous or for pay, is a material fact and must be reported by the claimant.

█ Since it was correctly determined that Mr. Smith failed to report a material fact, the next question is whether such failure was willful. There is no question but that the claimant's action was knowingly done; that is, his omission of the extra hours worked was not inadvertent. But it was not "knowing" in the sense that he understood the necessity for reporting that particular fact. Mr. Smith felt he was required to report any work he had done during the week. He relied on the definition of work to which he was referred by the unemployment compensation examiner: the definition of "Bona Fide Work" contained in the Department of Employment booklet "Facts About Your Unemployment Insurance." The definition read, "Work performed by an employee for an employer *and for which remuneration was received.*" (Emphasis added.) Since he received no compensation for the extra hours he volunteered, he felt he did not need to report them. He was not aware they were "material." Moreover, after Mr. Smith spoke with an official at the Idaho State

Labor Relations Board (relative to recovering pay for the extra hours the new radio station manager had required him to work), and learned that his work hours should have been reported, he reported them within a week to the Department of Employment, voluntarily and without being approached by the Department.

In *Meyer v. Skyline Mobile Homes, supra,* we reaffirmed earlier Idaho case law indicating that "willful" implies a conscious wrong. 99 Idaho at 761, 589 P.2d at 96. We stated:

"The legislature's presumed knowledge of our interpretations of willful in *Archbold* and *Hall* suggests that it intended to disqualify those claimants who purposely, intentionally, consciously or knowingly fail to report a material fact, not those whose omission is accidental because of negligence, misunderstanding or other cause." (Citations omitted.)

To interpret the "willful" requirement in I.C. § 72–1366(*l*) otherwise, as was done in this case, would create a type of constructive knowledge. We therefore reverse the holding of the Commission that claimant willfully failed to report a material fact in order to obtain unemployment insurance benefits, as being based upon the erroneous interpretation of "willful".

■ As to claimant's failure to report time and earnings for helping another individual install electronic equipment on the Duck Valley Indian Reservation, we note that the same principles would apply. The omission was of material facts, but inasmuch as claimant suffered a net loss of approximately $60.00 on the project, there were no earnings to report, and claimant's failure was not "willful".

■ We now address the Department's contention that claimant was not entitled to benefits for the week of January 16, 1982. The record shows that he worked 41 hours that week. Regardless of the fact that he was compensated for only seven of those hours, the time worked for his employer rendered claimant ineligible for benefits because it was not a week "of either no work or less than full-time work." I.C. § 72–

1312. The Commission's determination that the benefits received by claimant for that week must be refunded to the Department is correct.

The Commission's judgment that claimant willfully failed to report a material fact to receive unemployment benefits is reversed. The Commission's judgment is affirmed in all other respects. Costs to appellant.

BISTLINE, J., concurs.

DONALDSON, C.J., concurs in the result.

BAKES, Justice, dissenting:

The Court finds no error in the law applied by the Industrial Commission, but the Court's opinion disagrees with the commission's finding of fact concerning willfulness, and thus reverses the Industrial Commission on that factual basis. The majority's action violates both our statutory and constitutional duties and limitations. *See* Idaho Const. art. 5, § 9 ("On appeal from orders of the [commission] the court shall be limited to a review of questions of law."), and I.C. § 72–732 ("Upon hearing the court ... may set [the order] aside only upon any of the following grounds: ... (1) The commission's findings of fact are not based on any substantial competent evidence ....").

The majority correctly states that "the question [to be decided] is whether the number of hours worked—independent of any compensation received—constitutes a 'material fact' within the meaning of I.C. § 72–1366(*l*). We hold that it does."

The Court then further correctly states the law to be that "[t]he number of hours during the week which a claimant is working, even though the work may be voluntary and no compensation received, may nevertheless be material to the question of whether he is 'available for suitable work, and seeking work' as required for eligibility under I.C. § 72–1366(d). Hence, the number of hours worked during the week for his employer, whether they be gratui-

tous or for pay, is a material fact and must be reported by the claimant."

However, after correctly setting out the law, the majority then makes a factual finding that the claimant's failure to report both his additional work for his radio station employer, and his work for another person installing electronic equipment at the Duck Valley Indian Reservation, was not "willful." The rationale for that finding of lack of willfulness, even after recognizing that the claimant had omitted material facts from his application, is based upon the claimant's testimony of his own subjective intent that "he [the claimant] felt he did not need to report them. He was not aware that they were 'material.'" Based upon those subjective assertions by the claimant, the Court then enters its own factual finding that the omission of those material facts was not "willful."

However, the commission found the facts to be otherwise, deciding that the omission was willful. The commission apparently chose not to accept the claimant's explanation that "he felt he did not need to report them."

The commission is not bound to accept any claimant's testimony of his own subjective intent if that testimony is inconsistent with other objective facts in the record. If the commission were bound by claimants' statements of their own subjective state of mind, as the majority is apparently willing to say in this case, then claimants would always prevail, even though they grossly omitted material facts, if they were willing to testify that they did not know that the material facts were material or, that they felt they did not have to report them. However, that is not the law.

In *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 589 P.2d 89 (1979), we noted, in defining the word "willful," that it

" 'implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate law, in the sense of having an evil or corrupt motive or intent. It does imply a conscious wrong, and may be distinguished from an act maliciously

or corruptly done, in that it does not necessarily imply an evil mind, but is more nearly synonymous with "intentionally," "designedly," "without lawful excuse," and therefore not accidental.' " *Id.* at 761, 589 P.2d 89, *quoting* from *Archbold v. Huntington*, 34 Idaho 558, 565, 201 P. 1041, 1043 (1921).

The commission's decision in this case includes the following findings:

"The weekly certification form which the claimant was required to file with the Department of Employment to claim his benefits clearly requires a claimant to report both the amount of his earnings and the number of hours he worked for each employer during each week. Question number 1A on the form requires that the claimant check a block marked either 'yes' or 'no' preceding the statement 'I worked *or* had earnings.' (Emphasis supplied.) Other blocks require the amount of earnings and hours worked. (Exhibit No. 18.) Although the claimant correctly reported his actual earnings from the radio station, he did not report the actual number of hours he worked in most instances. During all but two of the weeks between November 1 and February 20, the claimant worked substantially more than seven hours per week."

Thus, the commission found, as a matter of fact, that although the claimant made weekly reports to the department and was asked the *number of hours worked,* he continued to report that he was working only seven hours per week even though, in nearly all of the weeks he reported, he worked substantially more than seven hours. The commission also found, as a matter of fact, that the claimant expected to be paid for the extra hours he worked. The commission, through the referee, then found:

"The Referee concludes that in this case the claimant consistently failed to report to the Department of Employment the number of hours he worked when he filed his weekly claims for benefits. As has been pointed out, this information is

material to his eligibility. ... In this case, it is clear that the claimant did not make a complete and unqualified disclosure of the number of hours he worked to the Department of Employment. The Referee therefore concludes that the claimant *willfully failed to report material facts* (the number of hours worked) in order to obtain unemployment insurance benefits." (Emphasis supplied.)

All of these findings are supported by the record. The question on review is whether or not the commission's decision is supported by the evidence, not what this Court thinks that the claimant "felt." The Court's action is an invasion of the commission's exclusive factfinding responsibility and right. The commission's finding that the claimant willfully failed to report a material fact is clearly sustained by the record. The commission should be affirmed on that finding.

Finally, the Court's handling of the failure to report his work at the Duck Valley Indian Reservation is even more difficult to understand. After noting that "[t]he omission was of material facts," the majority states that "inasmuch as claimant suffered a net loss of approximately $60.00 on the project, there were no earnings to report, and claimant's failure was not 'willful'." As the majority correctly notes in the early part of its opinion, the reason why the number of hours worked during the week by a claimant is material, even though the work may be voluntary and no compensation received, is because it goes to the question of whether the claimant is " 'available for suitable work, and seeking work' as required for eligibility under I.C. § 72–1366(d)." *Ante* at 1242. Based upon that statement of the law, it is difficult to understand how the majority can state that

even though the claimant was working at the Duck Valley Indian Reservation, and therefore was not available for other work, nevertheless because he "suffered a net loss of approximately $60.00 on the project, there were no earnings to report, and claimant's failure was not 'willful'." Because of that work he was not available for other work. Had he made a profit on that project, I presume the majority would state that his failure to report it was "willful." The fact that he may have lost money on the job, if that is the case, and there was no finding by the commission that he lost money,[1] that does not make him any more "available for suitable work, and seeking work" as the majority correctly states his obligation under the law to be.

The commission's findings in this case are supported by substantial competent evidence, and I would affirm the commission.

SHEPARD, J., concurs.

BISTLINE, Justice, specially concurring.

"That which is inadvertent can hardly be intentionally deceitful." *Brown v. Iowa Beef Processors*, 107 Idaho 558, 691 P.2d 1173 (1984) (Bistline, J., dissenting). "I cannot willfully withhold information I do not know to be relevant." Larry L. Smith, *pro se*, Reply Brief, *Smith v. State*, Sup.Ct. No. 14773. In *Brown* it was the claimant who brought to his employer's attention that he had not reported a DWI on his job application form, explaining that he did not think it was required. Here it is claimant Smith who, as he so writes in his brief, upon becoming "aware of the potential increased earnings for work I had already completed, ... realized that if this potential was fulfilled, I would owe DOE a refund"—on which basis he "promptly reported this in-

---

1. The hearing examiner found:

"In December, 1981, the claimant assisted another individual on the installation of some television antennae systems. The claimant invested money for parts for which he expected reimbursement. Although the project was not completed, the other individual paid him approximately $45 for his services. There was no report of the earnings made on the claim for benefits."

The Industrial Commission found:

"In December, 1981, the claimant assisted another individual to install electronic equipment on the Duck Valley Indian Reservation. He subsequently received approximately $45.00 for his services. He has not yet been reimbursed for parts which he purchased and installed. The claimant did not report any earnings or any hours worked on this project to the Department of Employment."

formation ... on my own initiative, unsolicited by DOE." Smith would learn, as did Brown, that honesty is not always the best policy—at least in the area of unemployment law. Brown was denied benefits for intending to deceive his employer from knowledge which the employer had not asked for; Smith was denied benefits because of a "willful failure to report material facts in order to obtain benefits." DOE Brief, p. 3. The said failure was in not reporting work hours for which there was no promise of remuneration. One would have thought that a 1984 appellate court would be unanimous in not allowing the declared purpose of the Employment Security Law[1] to be thus thwarted. Those who practice in this area of the law have undoubtedly taken note of the apparent shift in this Court's stance regarding that declared public policy since shortly after *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 589 P.2d 89 (1979). In that case, as in this, DOE terminated the claimant's benefits for having "failed to report a material fact in order to obtain benefits." 99 Idaho at 756, 589 P.2d 89. With only Justices Shepard and Donaldson dissenting, this Court reversed the Commission. But in doing so, the majority is found to have made this statement, which I now disavow as an inaccurate statement of the law: "In our view, a fact is material if it is relevant to the determination of a claimant's right to benefits; it need not actually affect the outcome of that determination." 99 Idaho at 760, 589 P.2d 89.

The majority opinion noted that *Fleury v. State*, 114 N.H. 528, 323 A.2d 919 (1974),

was contrary, but was not persuaded. In our recent *Brown* case, *supra*, we had our attention brought to other recent cases which demonstrate *Fleury* was not just an isolated happenstance. In *Unemployment Compensation Board of Review v. Dixon*, 27 Pa.Cmwlth. 8, 365 A.2d 668 (1976), six judges of the Commonwealth Court were agreed that "information ... falsely provided should concern matters material to the employment sought for the errant answer to be disqualifying for unemployment benefits. The Unemployment Compensation Board of Review's brief conceded that the double blow to Mr. Dixon, a husband and father, of loss of job and denial of unemployment compensation, is harsh. We do not agree that it is in this case, necessary." Similarly, *see Sun Shipbuilding v. Commonwealth Unemployment Compensation Board*, 35 Pa.Cmwlth. 275, 385 A.2d 1047 (1978). The Colorado Court of Appeals adopted "a standard of materiality" in *Casias v. Industrial Commission*, 38 Colo.App. 261, 554 P.2d 1357 (1976).

Turning back to our own 1979 *Meyer* case, the majority opinion also discussed the issue of the claimant's willfulness. As claimant Smith here argues, how can it be said that he withheld—willfully—that which he did not know to be relevant, i.e., material. Here the pro se claimant could not be on sounder ground. On this issue the *Meyer* Court and Mr. Smith are in accord:

> "It seems clear that the appeals examiner based his decision *not on what Meyer actually believed the question asked,*

---

1. **"72–1302. Declaration of state public policy.**—(a) As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Involuntary unemployment is therefore a subject of national and state interest and concern which requires appropriate action to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encour-

aging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that, in its considered judgment, the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, and for the compulsory setting aside of unemployment reserves to be used for the benefits of persons unemployed through no fault of their own."

but rather on what the examiner concluded Meyer should have understood the question to ask."

99 Idaho at 761, 589 P.2d at 96. (Justice Bakes writing for the Court.)

Anent further proceedings before the Commission, the opinion in *Meyer* went on to say:

"On Meyer's appeal from the DOE examiner's unfavorable rulings, an Industrial Commission referee held a second hearing. Meyer repeated much of his earlier testimony concerning the unsuitability of the work Skyline offered and his interpretation of the question on the weekly certification form. The referee prepared findings, conclusions, and an order, and the commission adopted these as its own. The findings make no mention of Meyer's interpretation of the question regarding refusal of work. The appeals examiner found in substance that Meyer misunderstood the question on the certification form, and the commission through its referee made no clear finding to the contrary. We therefore think it likely that the commission, like the appeals examiner, based its conclusion of willful withholding upon the notion that Meyer must be held to know that which he should have known through the exercise of minimal care. In effect, then, the commission may have assumed that the willfulness requirement was satisfied by gross negligence on Meyer's part."

99 Idaho at 761, 589 P.2d at 96.

The Court proceeded with an effort to shed some illumination on the apparent meaning of the word "willfully" as used in I.C. § 17–1366(j). The discussion is readily available, and no purpose is served here by repeating it, other than to take careful note that the Court's conclusion was that, in enacting the section, the legislature only "intended to disqualify those claimants who purposely, intentionally, consciously, or knowingly fail to report a material fact, not those whose omission is accidental because of negligence, misunderstanding or other cause." 99 Idaho at 761, 589 P.2d at

96. What the Court's opinion in *Meyer* then states in concluding Part IIB is clearly not within the bounds of the beneficent purpose of the Employment Security Law, and I disavow it in favor of the more acceptable rule that disqualification from benefits cannot be predicated upon failure to report a fact which is not known to be relevant. Claimant ought not to be charged with the expertise of an attorney in an area of the law in which even attorneys are not versed in the legalese thereof. I am reminded of the language of Justices Porter and McQuade in their joint dissenting opinion in *Hatch v. Employment Security Agency*, 79 Idaho 246, 313 P.2d 1067 (1957). After giving a statement of the basic purpose of this social legislation, as this opinion does, that dissent went on to add in language which is appropriate here:

"It has been held that the principal objective of this legislation was to encourage employers to make plans whereby there would be more stable employment; and as an additional objective, this legislation was to prevent economic insecurity for the individual workman and his family. Both of these objectives working together advance the general economy of this country and prevent mass unemployment from the chain-reaction type of national unemployment that comes about by a few basic industries' laying off their personnel.

"In the case at hand, the complete shutdown of employment by the Albeni contractors by the completion of the Albeni Falls Dam and the Washington Water Power Dam threw all the carpenters employed thereon out of employment. There was a finding by the examiner to the effect that thereafter the claimant did perform some work for which he drew no unemployment compensation for a short period.

"The effect of this ruling is to make a man sit idle and do absolutely nothing when there is no labor market for his labor. It seems apparent from the briefs that no carpentry work was available under any circumstances in and around Sandpoint, Idaho, where the claimant re-

sided. Under these circumstances, there should be a liberal interpretation of the statute as to what employment is, in accordance with the ruling of this court in *Hagadone v. Kirkpatrick*, 66 Idaho 55, 154 P.2d 181; dissenting opinion, *In re Gem State Academy Bakery*, 70 Idaho 531, 224 P.2d 529; *In re Potlatch Forests*, 72 Idaho 291, 240 P.2d 242. There is no finding that work of the character which the claimant was capable of performing was available in and around the area of Sandpoint, Idaho, in accordance with *Hagadone v. Kirkpatrick*, supra; *Wolfgram v. Employment Security Agency*, 75 Idaho 389, 272 P.2d 699; dissenting opinion, *Devlin v. Ennis*, 77 Idaho 342, 292 P.2d 469, 476. In the case of *Devlin v. Ennis*, supra, Justice Smith said:

" 'Both the workmen's compensation law and the decisions of this Court admonish the Industrial Accident Board to make inquiries and investigations as shall be deemed necessary. * * *'

"The claimant herein was living in a community which had the same characteristics as an area wherein there was seasonal unemployment, in that there was no employment available in the carpentry trade. Merely because the claimant occupied himself in repairing, building, or adding to the value of his home, he is now disqualified from receiving the benefits of financial assistance which was designed for this particular set of facts: i.e., gross unemployment.

"The cases which have been cited in the majority opinion, wherein full time employment on a house means self-employment, are only extracts of cases that are not capable of being persuasive to this Court in that the decisions are apparently those of administrative boards. These decisions, in Volumes 6 and 8 of Commerce Clearing House under paragraph 1901 of Unemployment Compensation, do not recite the facts upon which the decisions are based, and should not therefore be used by this Court as the basis of the majority opinion.

"The order of the Industrial Accident Board should be reversed."
79 Idaho at 255–57, 313 P.2d at 1072–1073.

### ON REHEARING

HUNTLEY, Justice.

The Court adheres to its decision of April 25, 1984, SHEPARD, J., now concurring in the result.

DONALDSON, C.J., and BISTLINE, J., concur.

BAKES, J., adheres to the view expressed in his dissenting opinion.