IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 50921

| | | |
|---|---|---|
| SEAN C. FLYNN, | ) | |
| | ) | |
|    Claimant-Appellant, | ) | |
| | ) | Boise, February 2025 Term |
| v. | ) | |
| | ) | Opinion Filed: May 13, 2025 |
| THE SUN VALLEY BREWING COMPANY, | ) | |
| COMMUNITY SCHOOL, INC., Employers; | ) | Melanie Gagnepain, Clerk |
| and IDAHO DEPARTMENT OF LABOR, | ) | |
| | ) | |
|    Defendants-Respondents. | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Industrial Commission is affirmed.

Scholnick Birch Hallam Harstad Thorne, Boise, for Appellant, Sean Flynn. Michael Bowers argued. Erika Birch appeared only.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent State of Idaho. Douglas A. Werth argued.

_____

MEYER, Justice.

Sean C. Flynn appeals from the Idaho Industrial Commission's determination that he willfully made a false statement or failed to report a material fact to obtain unemployment benefits under Idaho Code section 72-1366(12). The Commission's decision reinstated the Idaho Department of Labor's original eligibility and overpayment determination, resulting in the retroactive denial of Flynn's unemployment benefits and the imposition of civil penalties. Flynn argues that he made an honest mistake when he failed to report the income from a part-time job and when he inaccurately reported his income once he returned to full-time work. He contends that his omissions were not willful in that he did not intend to deceive the Idaho Department of Labor ("IDOL") when seeking benefits. For the reasons discussed below, we affirm the Industrial Commission's decision to retroactively deny Flynn unemployment benefits under Idaho Code section 72-1366(12) and its decision to impose civil penalties for the statutory violation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Flynn was laid off from his full-time job at Sun Valley Brewing Company ("Sun Valley Brewing") when the business closed during the COVID-19 pandemic. He applied for unemployment benefits from IDOL on March 25, 2020. When Flynn applied for unemployment benefits, he received a copy of the Idaho Labor Unemployment Insurance Claimant Benefit Rights, Responsibilities, and Filing Instructions pamphlet (the "pamphlet"), which provided instructions on how to complete weekly certification forms and contained admonitions that a failure to accurately report earned income was considered unemployment benefits fraud. Flynn received unemployment benefits from March 29, 2020, through June 27, 2020. During that time, Flynn was still employed part-time as a French teacher for the Community School, Inc., through June 27, 2020 ("Community School"). Flynn earned approximately $346.15 per week from his work at the Community School. He did not include his earnings from the Community School on the weekly certification forms he was required to file with IDOL while receiving unemployment benefits. Flynn marked "no" on twelve weekly certification forms when asked if he worked for an employer during any part of the week, even though, at the time, he was working part-time for the Community School. Flynn returned to full-time work at Sun Valley Brewing the week of June 22 through June 27, 2020. He reported his income from that week as $200. Sun Valley Brewing reported that Flynn earned $430 for that week. Flynn did not include the $346.15 he earned that week from the Community School on his weekly certification form.

Two years later, Flynn's claim for unemployment benefits was the subject of a routine audit. At that time, one of IDOL's claims investigators discovered a discrepancy between the income that Flynn reported for the week ending on June 27, 2020, and the income that Sun Valley Brewing reported he had earned for that week. She also noted that Flynn failed to report his income from the Community School. IDOL later issued an eligibility determination letter addressed to Flynn, in which he was notified that his claim for unemployment benefits was retroactively denied because he "willfully made a false statement or failed to report a material fact on this claim." IDOL also determined it had overpaid Flynn's unemployment benefits for that same period. IDOL sought repayment of $1,028 for every week that Flynn received benefits plus a penalty that ranged between $257 and $262 per week.

Flynn appealed IDOL's eligibility and overpayment determination to the Idaho Department of Labor Appeals Bureau. In his letter to the Appeals Bureau, Flynn stated that he had "a 100%

clear and honest conscience" and "thought [he] was doing what was right and correct from start to finish." Flynn claimed that he "made an honest mistake, not a calculated, willful, false statement," and that he was "completely shocked" that he had incorrectly completed his weekly certification forms. Flynn maintained that he "made an honest mistake in thinking [he] was filing unemployment for [his] primary job," and that he only needed to report his income from his primary job. Flynn characterized his omission as an "oversight." He did not address IDOL's determination that he had underreported his income from Sun Valley Brewing for the week of June 27, 2020.

At the hearing before the Appeals Examiner, the IDOL investigator testified that Flynn "did not have an explanation as to why he failed to report the earnings each week or failed to report that he was working for an employer each week." She noted that Flynn "had access to the gross earnings from both employers and had received pay stubs from the school during the weeks in question. [Flynn] made no attempt to contact the department to ask questions on reporting work or earnings during that time frame." The investigator noted that Flynn "was made aware of [the] reporting requirements when he filed for benefits," both online and through the hard copy of the pamphlet, and that he certified he had read and understood the pamphlet. She discussed specific pages in the pamphlet where claimants are advised about the reporting requirements. The investigator testified regarding Flynn's answers to relevant questions on his application for benefits and his weekly certification forms. Flynn testified regarding his understanding of IDOL's reporting requirements:

> [Flynn's counsel]. Sean, when you answered that you had not worked for an employer on your weekly certification reports, why did you—why did you answer no?
>
> [Mr. Flynn]. I answered no because I failed to understand this—the—the weekly claims process and I—I made an honest mistake and I—I was thinking—my belief was that I was claiming only against my primary employer Sun Valley Brewing, my customary and primary employer. That was what caused this whole thing really is my misunderstanding of this and it was wrong, but my—that I was thinking that my claim was against the Sun Valley Brewing—my main primary employer— customary employer and in this time of unprecedented upheaval, once in a lifetime pandemic distressful, failed to understand this reporting process and this led me to thinking that I was only claiming against Sun Valley Brewing and I did not ever once seek to hide my employment with the Community School.

Flynn also testified that he did not dispute that he misreported some of his wages when he completed his weekly certification forms. Again, Flynn testified that this was due to his misunderstanding of the reporting requirements:

[Flynn's counsel]. Okay. And did you believe that your income at the Community School was relevant to your unemployment claim as you understood it?

[Mr. Flynn]. Not in the—I was—I was—I believe that—my belief at the time was that I thought I was claiming against the Sun Valley Brewing Company, so—but I did not—but I knew they were aware of my income and then—and, then, in this appeal I—I was open about that—about the income from there—from the Sun— Community School.

During the hearing, the Appeals Examiner questioned Flynn about the discrepancy between the amount that he reported as income during the week he worked for Sun Valley Brewing and the amount that Sun Valley Brewing had reported:

[Appeals Examiner]. [W]e still have a discrepancy . . . since you reported 200 dollars of earnings that week where the Sun Valley Brewing Company reported that you earned 430 dollars . . . . Any explanation as to how you came up with 200 where they reported 430?
. . .
[Appeals Examiner indicating to Flynn what page to turn to in the Exhibit]
. . .
Any explanation for why you were off by 230 dollars that week?

[Mr. Flynn]. And I am not sure about that.

[Appeals Examiner]. All right.

[Mr. Flynn]. It's been a really long time and I don't – I don't really – I mean my – my checks are – my wife basically takes them, so I didn't – I mean I wouldn't even know where to look for that.

The Appeals Examiner also questioned Flynn regarding the weekly certification reports:

[Appeals Examiner]. So, again, then, when you filed your weekly certification reports each week you were asked a very specific question during the week did you work for an employer. So, regardless of whether or not you were working for Sun Valley Brewing, you were working for Community School. What did you misunderstand about that question that you could not answer that question with a yes?

[Mr. Flynn] I just thought that I was reporting against the Sun Valley Brewing Company and that's what I thought from the beginning and, unfortunately, that was an honest mistake of mine. I – I just misunderstood that and I know – honestly, just don't know why and I – you know, there is a lot of distress and upheaval during

that time and that was my main primary wage and probably led me to misunderstanding it and thinking this – I mean all I can think about when I try to think back on what my state of mind was – is that I was applying for benefits against the Sun Valley Brewing Company. So, that's what I was thinking and answering all these questions.

After the hearing, the Appeals Examiner modified IDOL's eligibility determination as to the dates that Flynn was ineligible for benefits and modified IDOL's overpayment determination, changing the amount that Flynn was required to repay. The Appeals Examiner determined that Flynn did "willfully" fail to accurately report his income for the one week he was employed by Sun Valley Brewing, in violation of Idaho Code section 72-1366(12), and denied Flynn benefits for that week. With respect to Flynn's failure to report his income from the Community School between April 4, 2020, through June 27, 2020, the Appeals Examiner determined that Flynn "misunderstood" that he was also required to report those earnings. The Appeals Examiner explained that, "even though a claimant omitted a material fact, unless it was "knowing" in the sense that he understood the necessity for reporting that particular fact,' the failure was not willful." The Appeals Examiner determined that the record did not support a finding that Flynn "willfully and deliberately provided false information to [IDOL] by failing to report this income." Ultimately, the Appeals Examiner determined that Flynn was required to repay a modified amount based on the week where he misreported his income from Sun Valley Brewing, along with a civil penalty, and denied Flynn's request for a waiver of repayment of the overpayment amount.

IDOL appealed the Appeals Examiner's decision to the Industrial Commission. Neither party requested a hearing before the Commission. The Commission reviewed the record, including an audio recording of the hearing before the Appeals Examiner, as part of its de novo review. It reversed the Appeals Examiner's decision, and reinstated IDOL's original eligibility and overpayment determinations. The Commission affirmed the denial of Flynn's request for unemployment benefits and a waiver of repayment of the amount overpaid. In its decision, the Commission made several findings of fact, including that: (1) Flynn "was instructed on the proper method of reporting work and earnings and was warned that failure to accurately report information is considered fraud," (2) Flynn "was also instructed that he was responsible for knowing the information contained in the Claimant Benefit Rights, Responsibilities, and Filing Instructions ("pamphlet")," which was available on IDOL's website and by mail, (3) Flynn "certified he would read the pamphlet and that he understood he would be held responsible for knowing and abiding by the information contained therein," (4) Flynn was required to certify that

5

his weekly reporting was accurate and he acknowledged he could be penalized for providing false information, and (5) Flynn consistently answered "no" on his weekly certifications when he was asked "Did you work for an employer during any part of the week?" despite working part-time for the Community School. The Commission found that when Flynn returned to full-time work, he reported his income as $200, while Sun Valley Brewing reported that Flynn earned $430 for that week. The Commission found that Flynn did not report his earnings from the Community School for the week of June 27, 2020.

In its decision, the Commission relied on *Gaehring v. Department of Employment*, 100 Idaho 118, 594 P.2d 628 (1979), where this Court affirmed the Commission's determination that a claimant willfully failed to report his earnings "based on evidence that the claimant was aware of the regulations regarding unemployment insurance." The Commission explained, based on this Court's decision in *Cox v. Hollow Leg Pub and Brewery*, 144 Idaho 154, 158 P.3d 930 (2007), that "[a] conclusion of willful behavior is equally supportable when the finder of fact concludes that the claimant knew or should have known what IDOL was asking and did not follow the instructions. The Commission acknowledged that "individuals filing claims for unemployment benefits do make inadvertent errors that do not stem from any malicious intent," and that Flynn "may not have intended to commit fraud."

Nevertheless, the Commission determined that Flynn "made the choice to intentionally omit that he had performed work during the weeks at issue" and based this determination on the explicit instructions given to Flynn by IDOL regarding reporting requirements, the repeated warnings that IDOL considered the failure to accurately report income to be fraud and that Flynn could be penalized if he failed to accurately report his weekly earnings, and Flynn's subsequent failure to accurately report his income. The Commission noted that "[i]t was [Flynn's] responsibility to keep IDOL apprised of his work and earnings for each week that he filed certifications for benefits" and Flynn's failure to accurately report his earnings "constituted a disregard of his obligation to report his work and earnings as accurately as possible." The Commission concluded that Flynn's conduct was willful based on the following: (1) Flynn's weekly response of "no" to the question whether he worked for "an employer during any part of the week;" (2) Flynn working part-time for the Community School during the time he answered that he did not work for an employer during any part of the week; (3) the unambiguous nature of the question; and (4) Flynn's failure to accurately report his income from Sun Valley Brewing.

After concluding that Flynn made "a willful misstatement or concealment of material facts" in connection with his claim for unemployment benefits, the Commission explained that Flynn's misstatements or misrepresentations disqualified him from receiving unemployment benefits and reinstated the original civil penalties. The Commission also affirmed the Appeals Examiner's decision to deny Flynn's request for a waiver of repayment.

On appeal to this Court, Flynn argues that Idaho Code section 72-1366(12) "requires actual knowledge of the falsity of a statement or materiality of an omission," and that a finding that a claimant "willfully made a false statement or willfully failed to report a material fact in order to obtain benefits" cannot be based on what a claimant "should have known." Flynn contends that the Commission erred because this Court has interpreted Idaho Code section 72-1366(12) to be limited to "claimants who purposely, intentionally, consciously, or knowingly fail to report a material fact," and to exclude "those whose omission is accidental because of negligence, misunderstanding or other cause." Flynn argues that "section 72-1366(12) is not intended to punish those who misreport due to misunderstanding." Flynn maintains that his failure to report his income from Community School "was not willful because he misunderstood the necessity of reporting it." Flynn asks this Court to clarify what constitutes "willfulness" under section 72-1366(12) and urges this Court to "disavow" statements it made regarding "willfulness" in more recent cases.

Flynn also argues the Commission failed to make adequate factual findings to support its decision and failed to weigh all the relevant evidence because the Commission did not include "anything about Flynn's understanding in its Findings of Fact" and applied a "should have known" standard to determine that Flynn's omissions were "willful." Flynn maintains the Commission's decision was deficient in that it did not address the Appeals Examiner's determination regarding Flynn's credibility, and it also failed to explain why it rejected the Appeals Examiner's conclusions. Flynn seeks an award of attorney fees on appeal under Idaho Code section 12-117 and under the private attorney general doctrine. Flynn asks this Court to overrule its decision in *Roe v. Harris*, 128 Idaho 569, 572, 917 P.2d 403, 406 (1996), *abrogated on other grounds by Rincover v. State Department of Finance, Securities Bureau*, 132 Idaho 547, 976 P.2d 473 (1999), in which this Court determined that Idaho Code section 12-117 preempted an award of attorney fees under the private attorney general doctrine.

7

IDOL counters that the Commission's decision is based on substantial and competent evidence and argues it should be affirmed. IDOL contends that the Commission correctly applied this Court's legal standards when it determined that Flynn's conduct was willful. IDOL notes that the Commission found that Flynn had actual knowledge that the facts he omitted or misstated were material, and that his conduct was willful. However, it maintains that even if this Court were to apply a "knew or should have known standard" to Flynn's conduct, the Commission's decision should still be affirmed. IDOL asks this Court not to overrule *Roe v. Harris* and to decline to award attorney fees to Flynn on appeal under Idaho Code section 12-117 or the private attorney general doctrine. IDOL seeks an award of attorney fees on appeal under Idaho Code section 12-117.

## II.   STANDARDS OF REVIEW

"When this Court reviews a decision from the Industrial Commission, we exercise free review over questions of law, but review questions of fact only to determine whether the Commission's findings are supported by substantial and competent evidence." *Jeffcoat v. Idaho Dep't of Corr.*, 161 Idaho 594, 595, 389 P.3d 139, 140 (2016) (quoting *Bell v. Idaho Dep't of Lab.*, 157 Idaho 744, 746, 339 P.3d 1148, 1150 (2014)). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Id.* (quoting *Bell*, 157 Idaho at 746, 339 P.3d at 1150). "The conclusions reached by the Industrial Commission regarding the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous." *Bringman v. New Albertsons, Inc.*, 157 Idaho 71, 74, 334 P.3d 262, 265 (2014) (quoting *Buckham v. Idaho Elk's Rehab. Hosp.*, 141 Idaho 338, 340, 109 P.3d 726, 728 (2005)).

On appeal, this Court "does not re-weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented." *Jeffcoat*, 161 Idaho at 595, 389 P.3d at 140 (quoting *Hughen v. Highland Ests.*, 137 Idaho 349, 351, 48 P.3d 1238, 1240 (2002)). We "view[] all the facts and inferences in the light most favorable to the party who prevailed before the Industrial Commission." *Id.* at 595–96, 389 P.3d at 140–41 (quoting *Neihart v. Universal Joint Auto Parts, Inc.*, 141 Idaho 801, 802–03, 118 P.3d 133, 134–35 (2005)).

Whether to award attorney fees under Idaho Code section 12-117 is a discretionary decision. *City of Osburn v. Randel*, 152 Idaho 906, 908, 277 P.3d 353, 355 (2012). Whether to award attorney fees under the private attorney general doctrine is also discretionary. *State v. Dist. Ct. of the Fourth Jud. Dist.*, 143 Idaho 695, 702, 152 P.3d 566, 573 (2007). A court does not abuse

its discretion so long as its decision complies with the four factors articulated in *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

### III.  ANALYSIS

Flynn's main contention on appeal is that the Commission erred when it determined Flynn's omissions were willful. He argues that the Commission determined that Flynn should have known that he was required to disclose the income from his part-time job and that he should have known he was required to accurately report his income from Sun Valley Brewing. Flynn urges this Court to clarify that the term "willful" in the unemployment benefits fraud context means that the claimant actually knew the disclosure of certain information was required and contends that if this Court allows a "knew or should have known" standard to apply to a willfulness determination, it will penalize a wide swath of claimants who did not intend to commit unemployment benefits fraud. IDOL asserts that the Commission applied an "actual knowledge" standard and that it determined that Flynn actually knew the information he withheld needed to be disclosed. IDOL urges this Court to affirm the Commission's decision, noting that since *Meyer v. Skyline Homes*, 99 Idaho 754, 759–62, 589 P.2d 89, 94–97 (1979), the case relied upon by Flynn, our jurisprudence has evolved significantly as evinced by our decisions in *Current v. Wada Farms Partnership*, 162 Idaho 894, 899–900, 407 P.3d 208, 213–14 (2017) and *Wittkopf v. Stewart's Firefighter Food Catering, Inc.*, 168 Idaho 203, 211, 481 P.3d 751, 759 (2021), in which we held that  a claimant "knew or should have known of the requirement that he completely and accurately report his work history on his unemployment applications." *But cf. Smith v. State Dep't of Employment*, 107 Idaho 625, 628, 691 P.2d 1240, 1243 (1984) (holding that interpreting "willful" to include constructive knowledge was erroneous). In the next section, we discuss how this Court's interpretation of the "willfulness" requirement has evolved to include both actual and constructive knowledge, and as a result, we hold that the Commission's application of a "knew or should have known" standard to determine whether Flynn's omissions were willful was not in error.

**A. We affirm the Commission's decision because it was based on substantial and competent evidence.**

1. Under our current case law, the standard for whether a claimant "willfully made a false statement" or "willfully failed to report a material fact" is whether the claimant "knew or should have known" the fact required disclosure.

Idaho Code section 72-1366(12) provides that a claimant is not entitled to unemployment

9

benefits for a period of 52 weeks "if it is determined that he has willfully made a false statement or willfully failed to report a material fact in order to obtain benefits." I.C. § 72-1366(12). The decision to disqualify a claimant from receiving benefits under this section turns on whether the omission or false statement is "material" and whether the omission or false statement was "willfully" made. "[T]he definition of materiality is broadly inclusive." *Waite v. Moto One KTM, LLC*, 169 Idaho 49, 55, 491 P.3d 611, 617 (2021). The word "material" in this context includes any fact or statement that is "relevant to the determination of a claimant's right to benefits; it need not actually affect the outcome of that determination." *Meyer*, 99 Idaho at 760, 589 P.2d at 95. "Willful" in the unemployment benefits context means "simply a purpose or willingness to commit the act or make the omission referred to." *Current*, 162 Idaho at 899, 407 P.3d at 213 (quoting *Bell v. Idaho Dep't of Lab.*, 157 Idaho 744, 747, 339 P.3d 1148, 1151 (2014)). It "does not require any intent to violate [the] law, in the sense of having an evil or corrupt motive or intent." *Id.* (quoting *Bell*, 157 Idaho at 747, 339 P.3d at 1151). "It does imply a conscious wrong" and "is more synonymous with 'intentionally,' 'designedly,' 'without lawful excuse,' and therefore not accidental." *Id.* (quoting *Bell*, 157 Idaho at 747, 339 P.3d at 1151).

In *Meyer*, this Court reversed the Commission's determination that the claimant's omission was "willful" because the Commission incorrectly "assumed that the willfulness requirement was satisfied by gross negligence on [the claimant's] part." 99 Idaho at 760–61, 589 P.2d at 95–96. The claimant in *Meyer* responded with a negative answer to IDOL's question asking whether he had refused an offer of work. *Id.* at 759, 589 P.2d at 94. He explained that he answered "no" because he did not consider the job offer that he refused to be "suitable work" because it required extensive travel that would significantly limit his time with his family. *Id.* at 760–61, 589 P.2d at 95–96. The Appeals Examiner determined that the claimant "misunderstood the question on the weekly certification form" and "concluded that Meyer willfully failed to report his refusal of work," despite finding the claimant's testimony to be credible. *Id.* at 761, 589 P.2d at 96. When the claimant's appeal reached the Commission, its decision did not "mention [his] interpretation of the question regarding refusal of work," in its findings. *Id.* We determined that the Appeals Examiner "based his decision not on what [the claimant] actually believed the question asked, but rather on what the examiner concluded [the claimant] should have understood the question to ask." *Id.* We determined that the Commission, "like the [A]ppeals [E]xaminer, based its conclusion of willful withholding upon the notion that [the claimant] must be held to know that which he should

10

have known through the exercise of minimal care." *Id.* We noted that the legislature "intended to disqualify those claimants who purposely, intentionally, consciously, or knowingly fail to report a material fact, not those whose omission is accidental because of negligence, misunderstanding or other cause." *Id.* We reversed the Commission's finding because it "may have assumed that the willfulness requirement was satisfied by gross negligence on [the claimant's] part." *Id.* When we reversed the Commission's willfulness determination, we stressed "that the mere assertion by [the claimant] that there was a communication gap of some kind does not preclude a finding that [the] claimant did in fact willfully make a false statement or representation or willfully fail to report a material fact in order to obtain benefits." *Id.* at 762, 589 P.2d at 97.

Justice Donaldson's dissent in *Meyer* took issue with the majority's interpretation of the term "willfully," and his reasoning is reflected in this Court's more recent decisions. Justice Donaldson urged this Court "to define 'willful' in terms of intentional or deliberate (i.e. voluntary action or omission in completing the form) without requiring proof of a scienter [sic] in the application of [Idaho Code section 72-1366(12)]." *Id.* at 763–64, 589 P.2d at 98–99. He questioned "whether the majority will in the future be willing to uphold a finding of a claimant's comprehension of a question and thus willfulness in answering falsely based on a typical fact situation where claimant asserts misunderstanding but admits reading the instruction book explaining the claim form." *Id.*

Several years later, in *Smith v. State Dep't of Employment,* 107 Idaho 625, 627, 691 P.2d 1240, 1242 (1984), we reversed the Commission's determination that the claimant's omission was willful because he relied upon the Department of Employment's definition of work when deciding he was not required to report unpaid volunteer work. We noted that the Department's definition read "[w]ork performed by an employee for an employer *and for which remuneration was received.*" *Id.* As a result, because the claimant "received no compensation for the extra hours he volunteered, he felt he did not need to report them. He was not aware they were '"material."' *Id.* Although this Court appeared to reject the "knew or should have known" standard in that case, we held the following: "[i]n *Meyer v. Skyline Mobile Homes, supra,* we reaffirmed earlier Idaho case law indicating that 'willful' implies a conscious wrong . . . .To interpret the 'willful' requirement in [Idaho Code section 72-1366(12) otherwise, as was done in this case [by the Commission], would create a type of constructive knowledge." *Id.* at 628, 691 P.2d at 1243. We determined that the Commission applied an "erroneous" interpretation of the term "willful." *Id.*

11

Similar to *Smith*, in *Wooley v. Bridge St., Inc.*, 166 Idaho 559, 563–64, 462 P.3d 87, 91–92 (2020), we reversed the Commission's determination that a claimant willfully failed to report his status as a corporate officer when the information provided by IDOL did not alert the claimant to the fact that corporate officer status could affect his eligibility for benefits. We explained that the question "Did you receive any wages or perform services as a Corporate Officer?" did not indicate to the claimant "the necessity of reporting his status as a corporate officer." *Id.* at 564, 462 P.3d at 89. Further, the unemployment benefits pamphlet and IDOL website "provide[d] no information . . . to explain why it is necessary for claimants to report their corporate officer status when filing a claim for benefits." *Id.* As a result, we held that although the claimant omitted a material fact, the omission was not willful because "the question [he] was asked failed to distinguish between *being* a corporate officer and *performing services* as a corporate officer. As such, [claimant] did not understand the necessity of reporting the omitted fact." *Id.*

Both *Smith* and *Wooley* indicate that a claimant's omission does not rise to the level of willfulness under a "knew or should have known standard" when the question asked is vague or ambiguous, or if IDOL's interpretation of the legal requirement was inconsistent with the instructions IDOL gave claimants. In this case, as the Commission noted, IDOL provided explicit instructions and multiple warnings to Flynn regarding the importance of accurately reporting all income from *any* employer during the weekly certifications. We agree with the Commission that the question "Did you work for an employer during any part of the week?" is unambiguous and alerts claimants to the necessity of reporting any work done by the claimant. It does not provide any basis for the fine line Flynn is attempting to draw here between reporting any work done versus work done for only the primary employer. The pamphlet provided "explicit instructions" about how to report income, including that claimants are required to "report *all* work and earnings," and "[r]eport *all* earnings from *all* employers." (Emphasis added.) The Commission explained that "there was nothing in the instructions indicating that [Flynn] was exempt from answering this question truthfully or that he did not need to report that he performed work for an employer that he did not consider to be his primary employer." Flynn's situation is factually distinct from *Smith* and *Wooley* because IDOL provided Flynn with information that informed him that his income from part-time work was a material fact, and of the necessity of accurately reporting his income.

In *Cox v. Hollow Leg Pub and Brewery*, this Court affirmed the application of the "knew or should have known" standard urged by Judge Donaldson. 144 Idaho 154, 158, 158 P.3d 930,

934 (2007), *overruled on other grounds by Scott v. Home Depot USA, Inc.*, __ Idaho __, 561 P.3d 494 (2024). We upheld the Commission's finding that the claimant willfully misreported her income because she "knew or should have known she needed to insure she reported her earnings accurately, but nevertheless deliberately chose not to do so." *Id.* This Court upheld the Commission's decision, noting that it considered that the claimant was "reminded each time that her answers had to be accurate and truthful, [but] she opted not to take any steps to insure [sic] her answers were accurate." *Id.* This Court explained that "[t]he Commission could infer from the facts in the case that [the claimant's] underreporting was willful and not accidental. It was not required to accept her assertion that she tried to keep track of her income in her head and reported it to the best of her knowledge." *Id.*

Along the same lines, in *Current*, this Court upheld the Commission's determination that the claimant's misreporting of his income was willful based on the claimant's failure to verify and make corrections to his reported income. 162 Idaho at 899–900, 407 P.3d at 213–14. This Court noted that the claimant, while arguing that he made "an honest mistake and that he did not intentionally misrepresent his wages," failed to grapple with this Court's definition of willfulness as "simply a willingness to commit the act." *Id.* at 899, 407 P.3d at 213. We explained that "[i]t is possible that [the claimant's] misunderstanding was credible, *i.e.*, that he never received the letter notifying him that the wages he had reported differed from the wages reported by [his employer], or that he did not have access to his paystubs," but noted, "these arguments fail to justify [the claimant's] failure to follow up to ensure that his reporting was accurate." *Id.* at 900, 407 P.3d at 214. We noted that the claimant "received a pamphlet that informed him that he was required to keep track of hours and earnings," and that the pamphlet specifically instructed that if claimants were estimating their income, they "*must call . . . when [they] receive the correct earnings information.*" *Id.* at 899, 407 P.3d at 213 (ellipses in original). We explained that "[a]s a result, [the claimant] was on notice that if he estimated his wages, he needed to follow up with IDOL to provide accurate information." *Id.* at 899–900, 407 P.3d at 213–14. We determined that the Commission's finding that the claimant's misreporting was willful was supported by substantial and competent evidence, regardless of the fact that the Commission conceded that the claimant "may not have intended to commit any fraud by underreporting his wages," because the claimant's failure to "verify that the wages he reported were correct" was sufficient to support the Commission's decision. *Id.* at 900, 407 P.3d at 214.

Similar to the claimant in *Current*, Flynn also contends that his errors and omissions were the result of an "honest mistake" and that he did not have the intent to conceal information from IDOL. Here, the Commission looked to the fact that Flynn received the pamphlet with clear reporting instructions. The pamphlet contains a frequently asked question section that discusses how to report earnings and other income on weekly certifications, and it explicitly warns claimants that misreporting income will be considered fraud. The pamphlet provides a phone number to contact IDOL to correct mistakes in reporting, and it also advises claimants that misreporting "will be found in an audit weeks or months later and may result in administrative fines, overpayment assessments and other penalties," including, "criminal prosecution." Flynn was advised during the application process that "failure to report information accurately is considered fraud," and he was "specifically advised that all work and earnings must be reported for each week that a claimant files for benefits." Flynn certified that he understood he would be held to the information contained in the pamphlet and that a failure to report his income accurately would be considered fraud and could result in a penalty being imposed.

We acknowledge that our case law has evolved so that "willfulness" in this context does not require a showing that the claimant intended to break the law or to deceive when completing an application for unemployment benefits. Our recent cases reflect a benchmark that a claimant "knew or should have known" that disclosure was required as applied to the term "willful" under Idaho Code section 72-1366(12). As a result, we decline to adopt Flynn's interpretation of the term "willfully."

2. The Commission's determination that Flynn's omissions were willful under Idaho Code section 72-1366(12) is supported by substantial and competent evidence.

The Commission determined that Flynn's decision to omit his earnings from the Community School on his weekly certificate forms was intentional. While it acknowledged that "individuals filing claims for unemployment benefits do make inadvertent errors that do not stem from any malicious intent," the Commission also stressed that filing claims for unemployment benefits "impose[s] . . . a number of responsibilities [on claimants], including truthfully disclosing all of the information that IDOL, as the administrator of the program, has deemed necessary to ensure that only eligible claimants receive those benefits." The Commission explained that Flynn was responsible for keeping "IDOL appraised of his work and earnings for each week that he filed certifications for benefits." It determined that Flynn's omissions and misstatements were willful:

14

[I]t must be concluded that [Flynn's] failure to report his work and earnings from Community School between March 29, 2020 and June 27, 2020, and failure to accurately report his earnings from Sun Valley Brewing for the week ending June 27, 2020, constituted a disregard of his obligation to report his work and earnings as accurately as possible.

Flynn argues that the Commission's decision is unclear with respect to whether it found Flynn's testimony to be credible, and that remand is required because "the Commission has a duty to make unambiguous findings of fact that support its decisions," and "the absence of an express finding about what Flynn understood strongly suggests the Commission's order is based on what Flynn should have understood." Flynn conceded that "there are two passages in the Commission's analysis that could imply it found Flynn did understand reporting requirements," when the Commission determined that Flynn "made the choice to *intentionally omit* that he had performed work during the weeks at issue," and that he disregarded his reporting requirements. Flynn also argues that the Commission should be required to explain why it rejected the Appeals Examiner's credibility determination. IDOL does not address this argument, other than to argue that the Appeals Examiner's findings are not relevant because the Commission conducted a de novo review of the record.

Even if the Commission's decision is not the model of clarity, its determination that Flynn's omission was willful is nevertheless supported by substantial and competent evidence. The Commission considered that Flynn had been provided with explicit instructions on how to complete his weekly certification forms. In its findings of fact, the Commission found that Flynn "was instructed on the proper method of reporting work and earnings and was warned that failure to accurately report information is considered fraud." The Commission found that the unemployment benefits pamphlet "explains that a claimant must report all work performed for an employer or business during the week, and all earnings from all employers." It found that Flynn continued to mark "no" when asked if he had worked for an employer during any part of the week, despite working part-time as a French teacher during the weeks he applied for unemployment benefits. The Commission also found that Flynn reported that he earned $200 for the week that he returned to full-time employment with Sun Valley Brewing while Sun Valley Brewing reported $430 for that same week. It noted that Flynn did not report any work or earnings from the Community School for that week. The Commission emphasized both that Flynn received "explicit instructions [from] IDOL . . . about his obligations and [Flynn's] failure to follow those instructions." Referencing those instructions, it concluded that Flynn's failure to accurately report

15

his earnings from both the Community School and Sun Valley Brewing constituted "a willful misstatement or concealment of material facts[.]" This conclusion is supported by the substantial and competent evidence in the record.

Although the Commission did not directly address the Appeals Examiner's credibility determination, that omission does not require remand in this case. The Commission's decision shows it was aware of Flynn's claim that he had made an honest mistake in reporting, and it concluded that Flynn intentionally omitted material facts to obtain unemployment benefits. Although the Commission's decision did not expressly make contrary findings regarding Flynn's credibility, its other findings (and analysis) support its conclusion that Flynn's omissions were willful under Idaho Code section 72-1366(12).

**B. Neither party is entitled to an award of attorney fees on appeal.**

1. <u>We decline to award IDOL attorney fees on appeal under Idaho Code section 12-117(1) because Flynn's appeal was not "without a reasonable basis in fact or law."</u>

IDOL seeks an award of attorney fees on appeal under Idaho Code section 12-117. Idaho Code section 12-117(1) provides that this Court "shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law." I.C. § 12-117(1). "Prevailing party" is defined as "a party that prevailed on the claims or allegations that constituted the gravamen of the claims and allegations as a whole." I.C. § 12-117(5). "Governmental entity" is defined as "any state agency or political subdivision." I.C. § 12-117(4). "The standard for evaluating whether a party's conduct was 'without a reasonable basis in fact or law' under section 12-117 is substantially similar to the standard for evaluating whether a party pursued an action 'frivolously, unreasonably, or without foundation' under section 12-121." *S Bar Ranch v. Elmore County*, 170 Idaho 282, 313, 510 P.3d 635, 666 (2022) (citations omitted).

Generally, this Court has declined to award attorney fees under Idaho Code section 12-117 when a party "presents a 'legitimate question for this Court to address.'" *Allen v. Partners in Healthcare, Inc.*, 170 Idaho 470, 481, 512 P.3d 1093, 1104 (2022) (quoting *Arambarri v. Armstrong*, 152 Idaho 734, 740, 274 P.3d 1249, 1255 (2012)). In this case, Flynn's claim that the Commission applied the wrong standard when it determined that he "willfully" omitted material facts to obtain unemployment benefits is unavailing. However, Flynn's argument against a "knew or should have known" standard, and his request for this Court to clarify its approach to Idaho

Code section 12-1366(12) presented legitimate questions for this Court to address. As a result, we decline to award attorney fees to IDOL under this section.

2. <u>Flynn is not entitled to an award of attorney fees on appeal under Idaho Code section 12-117(1) or the private attorney general doctrine because he is not the prevailing party.</u>

Flynn seeks attorney fees on appeal under Idaho Code section 12-117 and the private attorney general doctrine. Both Idaho Code section 12-117 and the private attorney general doctrine contemplate an award of attorney fees to the prevailing party on appeal. *Friends of Farm to Market v. Valley County*, 137 Idaho 192, 201, 46 P.3d 9, 18 (2002). In this instance, Flynn is not entitled to an award of attorney fees under Idaho Code section 12-117 or the private attorney general doctrine because he is not the prevailing party on appeal.

## IV.    CONCLUSION

For the above-stated reasons, the Idaho Industrial Commission's decision is affirmed.

Chief Justice BEVAN and Justices BRODY, MOELLER and ZAHN CONCUR.